# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BR Associates, a Pennsylvania
General Partnership,
                  Appellant

               v.

Board of Commissioners of the
Township of Upper St. Clair

               v.

Rodney Ardolino and Tammy
Ardolino, husband and wife,
and Joyce Mendenhall

       :   No. 775 C.D. 2015
       :   Argued: April 12, 2016

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**           **FILED: May 5, 2016**


      In this land use appeal, BR Associates (Objector), a general partnership which owns a business park with approximately 36 commercial tenants, appeals from an order of the Court of Common Pleas of Allegheny County[1] (trial court) that affirmed a decision of the Board of Commissioners (Board) of the Township of Upper St. Clair (Township) granting amended final approval of a planned nonresidential development on neighboring properties owned by Rodney Ardolino and Tammy Ardolino (Ardolinos), and Joyce Mendenhall (collectively, Applicants). For the reasons that follow, we affirm.

---

[1] The Honorable Joseph M. James, Senior Judge, presided.

# I. Background

In 2012, the Ardolinos sought Board approval to build a 4,995 square-foot restaurant with off-street parking, stormwater management controls, and landscaping on an approximately 1.61-acre parcel in the Township's Planned Restricted Light Industrial District. The Ardolinos' application included a detailed stormwater management study from a professional engineer, Kimberly Gales-Dunn (Applicants' Engineer), of J.R. Gales and Associates. Applicants' Engineer's study certified that the 2012 plan met the requirements of the Township's land development ordinances and regulations. Objector did not oppose Applicants' Engineer's study.

In April 2012, the Board tentatively approved the Ardolinos' 2012 plan. In July 2012, the Board granted final approval conditioned on the requirement that the Ardolinos obtain a highway occupancy permit from the Pennsylvania Department of Transportation (PennDOT) for their proposed driveway access on Maple Lane, a private street on Objector's property. However, the Ardolinos encountered problems obtaining the PennDOT permit and decided to revise their plan.

In June 2014, the Ardolinos and Joyce Mendenhall submitted an application for an amended land development plan. The 2014 amended plan added some parking spaces and changed the access to the Ardolinos' property by creating an easement over Applicant Mendenhall's neighboring property onto Boyce Road. As part of their amended plan, Applicants resubmitted Applicants' Engineer's stormwater management study.

On June 19, 2014, the Board unanimously recommended approval of Applicants' amended plan. Nonetheless, the Board scheduled an August 2014 public hearing. At the hearing, Applicants placed numerous exhibits, including the stormwater study, into the record. Applicants also submitted a memo from Township Engineer Ruth L. Olmer (Township Engineer) concluding that the stormwater plan remained adequate because it did not change despite the other changes in the amended plan. Applicants' Engineer also testified regarding the details of the land development plan and stormwater controls.

Objector's counsel appeared and indicated to the Board that Objector's sole concern was Applicants' stormwater management study. Objector presented testimony from a professional engineer, Martha Frech (Objector's Engineer), who claimed there were errors in Applicants' Engineer's calculations. Objector's Engineer also recommended that a flood plain analysis be completed.

Objector also presented testimony from its property manager, Don Falcioni (Property Manager). He testified about flooding that occurred on Objector's property, Sainte Claire Plaza, in 2013 and 2014. In the July 2013 flood, all but two of Objector's tenants sustained flood damage. Objector incurred direct flooding costs of nearly $500,000. In May 2014, Objector's property sustained another damaging flood. In both cases, the floodwaters flowed from Applicants' neighboring properties.

The Board ultimately continued the hearing until October 2014 because Applicants made some minor changes to the stormwater management plan

and wanted to provide Objector with an opportunity to review the changes. Applicants also submitted correspondence and calculations from their second engineer, Stephen G. Sawyer (Applicants' Second Engineer). He addressed various concerns raised about Applicants' stormwater plan.

At the October hearing, the Township's Director of Planning and Community Development, Scott Brilhart (Planning Director), advised the Board that Township's Engineer reviewed Applicants' revisions and declared them compliant with the Township Code and Township Stormwater Ordinance. Applicants' Engineer testified how the revisions to the plan would function. Township Engineer testified that she reviewed everything and confirmed that the revised plan complied with the Township ordinances.

Objector again called Objector's Engineer, who noted her concerns from prior correspondence. Objector's Engineer also introduced a letter claiming that Applicants' amended plan included a pipe running across Maple Lane on Objector's property. Objector also produced a deed indicating it owned Maple Lane. Property Manager also testified that Objector did not consent to Applicants installation of a pipe on its property.

Objector's counsel then summarized Objector's position that Applicants' amended plan should not be approved because Applicants lacked permission to install the pipe on Objector's property. In response, Applicants claimed authority under their easement rights to install the pipe. Applicants also argued that a court, rather than the Board, was the proper forum to determine

4

property rights. After consulting the Township solicitor, the Board agreed that it was not in a position to determine title, and that the dispute over title was not a reason to deny Applicants' amended plan.

Thereafter, the Board closed the hearing and voted to approve Applicants' amended plan. On October 6, 2014, the Board issued a written decision granting final approval to Applicants' amended plan subject to certain specified conditions. These conditions included approval of Applicants' stormwater management plan by the Pennsylvania Department of Environmental Protection (DEP).

Objector appealed to the trial court. Taking no evidence, the trial court issued an April 2015 opinion and order affirming the Board. In its decision, the trial court concluded that the Board did not abuse its discretion in choosing between opposing experts. The trial court also noted that issues regarding title to property are not appropriate for consideration by a municipal body in a land use proceeding. Objector appeals.[2]

## II. Issues

Objector raises three substantial evidence challenges to the Board's decision approving Applicants' 2014 amended plan. More specifically, Objector

---

[2] Where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013). An abuse of discretion occurs when the governing body's findings are not supported by substantial evidence. Gerryville Materials, Inc. v. Planning Comm'n of Lower Milford Twp., Lehigh Cnty., 74 A.3d 322 (Pa. Cmwlth. 2013).

contends the record does not support the Board's determinations that: (1) Applicants' stormwater management plan met the requirements of the Township Code concerning control of peak stormwater discharge, flow and runoff or release; (2) Applicants' stormwater management plan met the requirements of the Township Code concerning post-construction stormwater management maintenance and best management practice plans for the stormwater facilities proposed under the plan; and, (3) Applicants' stormwater management plan met the requirements of the Township Code concerning the plan's compliance with state and federal floodplain management requirements.

In addition, Objector asserts the Board, in approving the amended plan, disregarded the fact that Applicants failed to demonstrate any legal easement, license or right to utilize Objector's land for part of Applicants' stormwater management facilities.

## III. Discussion

### A. Stormwater Management Compliance

Objector contends the Board erred in determining Applicants' stormwater management plan met the requirements of the relevant Township ordinances for several reasons. To that end, Objector cites Section 51.1.2.2 of the Township Code, which states:

> Site Plan: The application for the permit shall be accompanied by two (2) copies of a site plan which is a survey of a lot upon which is shown to scale the location of existing and proposed structures and structures to be removed or moved; existing and proposed contours; location and dimensions of yards; proposals for the disposition of sanitary waste and stormwater; indications

6

> of compliance with zoning, grading, building and other code requirements; name of applicant and landowner; area location map or recorded subdivision or land DEVELOPMENT plan name and lot number; dates of preparation and revisions; locations of all existing utility lines and existing and proposed connections to them; evidence of preparation in accordance with the Pennsylvania Construction Code Act [Act of November 10, 1999, P.L. 491, 35 P.S. §§ 7210.101—7210.1103].

Reproduced Record (R.R.) at 479a (emphasis by underline added).

Objector maintains the stormwater management plan in Applicants' 2014 amended plan fails to comply with the Township Code in the following specific ways.

## B. Control of Peak Stormwater Discharge

### 1. Argument

First, Objector asserts the Township Code contains clear standards for control of peak stormwater discharge in the event of 2, 10 and 100-year flood level storms. Objector maintains its unrefuted expert reports and testimony show Applicants' Engineer's omissions and miscalculations in the stormwater management system. As a result of these omissions and miscalculations, the system will be overwhelmed during large storm events, and the underground pipes and above-ground pond will be filled with flooding water from the upper drainage basin and the tailwater conditions downstream of the site. At that point, the above-ground and underground detention facilities will be submerged and unable to function as stormwater management controls.

7

Objector further asserts the Board never heard any specific testimony or saw any evidence contradicting this scenario. To the contrary, Applicants' Engineer admitted that water would back up from the pipes. Further, the Township's Engineer and Planning Director simply made cursory statements that Applicants' 2014 amended plan met the requirements of the Township Code without providing anything to support their sweeping conclusions. Such conclusory statements cannot be considered such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. See Lantos v. Zoning Hearing Bd. of Haverford Twp., 621 A.2d 1208 (Pa. Cmwlth. 1993) (substantial evidence defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion). In short, Objector argues the Board's decision lacked any substantial evidence showing Applicants' stormwater management plan actually complied with the Township Code.

What is more, Objector contends the Board capriciously disregarded competent evidence presented by Objector's Engineer thereby showing the Board abused its discretion in approving Applicants' amended plan. Capricious disregard of material competent evidence is an appropriate consideration for an appellate court reviewing a land use appeal. Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh, 997 A.2d 423 (Pa. Cmwlth. 2010). It occurs only when the fact-finder deliberately disregards relevant, competent evidence. Id.

Here, Objector asserts, the Board and even the trial court, disregarded Applicants' Engineer's own testimony that Applicants' stormwater management

8

system, as designed, would not contain the water anticipated to flow into it. Therefore, Objector argues, the Board's disregard of this testimony should have been fatal to its decision. As such, Objector continues, the trial court erred by similarly disregarding this testimony.

## 2. Analysis

In a land use appeal, the local governing body is the ultimate fact-finder in a land use proceeding. Joseph v. N. Whitehall Twp. Bd. of Supervisors, 16 A.3d 1209 (Pa. Cmwlth. 2011). As fact-finder, the governing body is empowered to resolve conflicts in the testimony. Herr v. Lancaster Cnty. Planning Comm'n, 625 A.2d 164 (Pa. Cmwlth. 1993). This Court may not substitute its interpretation for that of the fact-finder. Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp., 25 A.3d 1260 (Pa. Cmwlth. 2011).

Here, Objector argues the Board's determination that Applicants' stormwater management plan meets the Township Code's requirements for control of runoff during specified storm events is not supported by substantial evidence. We disagree.

First, Applicants' stormwater management study[3] included a "Stormwater Management Certification" signed by Applicants' Engineer, certifying that Applicants' stormwater management plan complies with the Township's stormwater management ordinances and regulations. R.R. at 24a. The

---

[3] See Reproduced Record (R.R.) at 23a-102a.

9

study itself contains numerous supporting calculations for stormwater runoff control for 2-year, 10-year, 25-year and 100-year floods. R.R. at 25a-102a.

At the August 2014 hearing, Objector's Engineer expressed several concerns about the ability of Applicants to manage runoff during a major storm likes the ones which flooded the subject property in 2013 and 2014. In response to Objector's concerns, Applicants' Engineer consulted with Applicants' Second Engineer, who recommended using an underground pipe rather than the originally planned rain garden.

Applicants then revised their stormwater management plan in accord with this recommendation. Applicants' Engineer prepared a new plan[4] and again certified that it complied with the Township's stormwater management ordinances and regulations. R.R. at 112a. The new study also contained numerous supporting calculations for stormwater runoff control for 2-year, 10-year, 25-year and 100-year floods. See R.R. at 113a-190a. With respect to the 2014 modifications, Applicants' Engineer testified as follows (with emphasis added):

> Moving forward, what we had done is [Applicants' Second Engineer] calculated the 100-year floodway or the 112-acre, approximately, drainage area that goes from a 48-inch pipe of 872.31 in his report and letter dated August 21. We went back out and did additional surveying in this area to actually map out the floodway of the larger stream. What we had done then is what we had before. It was the rain bin in this area (indicating).

---

[4] See R.R. at 111a-190a.

> So to put that outside of the floodway and avoid any maintenance issues is what we're now proposing is an underground detention system that will connect into the 18-inch pipe on Maple Lane. That system will control the 2-year to 87 percent of the pre-development, the 10-year to 76, the 25-year to 71 percent, and the 100-year to 75 percent of the pre-development.

Bd. Hr'g, 10/6/14, Notes of Testimony (N.T.) at 9; R.R. at 290a.

Further, although Applicants' Engineer testified water will back up in the pipe during a 100-year storm, R.R. at 292a, Applicants' Second Engineer opined in a memo to Applicants' Engineer that the detention pond would not be overtopped. Specifically, Applicants' Second Engineer stated (with emphasis added):

> We redid our hydrologic and hydraulic analyses of said pipe for the 100-year, 24-hour storm and calculated a maximum, backwater elevation of 872.31 instead of 872.42. You will still have to install an underground pipe in lieu of the proposed rain garden.
>
> You had asked me if your proposed detention pond would be overtopped by the backwater of the 48'' pipe during the 100-year, 24-hour storm. Our answer is, "No". The breastwork of the proposed, detention pond is 878,00+/-, well above the backwater elevation of 872.29.

R.R. at 464a.

Contrary to Objector's contention, the record reflects that Applicants' two engineers established that Applicants' stormwater management plan would contain the water anticipated to flow into it during a 2-year, 10-year, 25-year or 100-year storm. Further, the Board did not capriciously disregard Applicants'

11

Engineer's testimony that water will back up into the 48" pipe during a 100-year storm. Rather, Applicants' Second Engineer explained that the backwater elevation would remain below the breastwork of the proposed detention pond. R.R. at 464a. Consequently, the Board's determination that Applicants' stormwater management plan meets the Township Code's requirements for control of runoff during specified storm events, including 100-year storms, is supported by substantial evidence.

## C. Post Construction Maintenance

## 1. Argument

Objector next asserts Applicants failed to provide evidence of adequate post-construction stormwater management maintenance and best management practices plans for the proposed stormwater facilities. This includes providing evidence of permission or rights to access parts of the designed facilities to be installed on Objector's property.

> Section 99.4.2.4.1.4 of the Township Code provides:
>
> The [DEP] has regulations that require municipalities to ensure design, implementation, and maintenance of Best Management Practices (BMP's) [sic] that control runoff for new development and redevelopment (hereinafter 'development') after Regulated Earth Disturbance activities are complete. These requirements include the need to implement post-construction stormwater BMP[s] with assurance of long-term operations and maintenance of those BMP[s].

R.R. at 483a. Here, Objector asserts Applicants did not provide evidence of BMPs to be implemented to control post-construction stormwater runoff.

12

In particular, Objector argues Applicants failed to provide any evidence of a right to connect to existing stormwater management facilities on Objector's property. Objector raised this issue before the Board. See R.R. at 302a. Objector asserts that as the adjoining property directly downhill from the development site, it is also the party most impacted by this failure.

## 2. Analysis

Applicants argue Objector waived the post-construction maintenance issue by failing to raise it before the Board. See In re McGlynn, 974 A.2d 525 (Pa. Cmwlth. 2009) (objectors' failure to raise ownership interest issue before board of supervisors resulted in a waiver of that issue). More specifically, Applicants assert, Objector failed to raise any claim that Applicants' amended plan lacked a post-construction maintenance plan.

Although Objector did raise before the Board the issue of whether Applicants could connect to stormwater facilities on Objector's property without permission, this issue is separate from the issue of whether Applicants' amended plan lacked a post-construction maintenance plan. As to the latter issue, Objector fails to point to anything in the record indicating it preserved the issue of whether Applicants' amended plan lacked a post-construction maintenance plan. Accordingly, Objector waived this issue. McGlynn.

Even assuming Objector did not waive this issue, Applicants' 2014 stormwater management study includes the following maintenance plan:

> The proposed detention pipe and detention pond
> with their outlet control structures have been designed to

13

be as maintenance free as is practically possible. The trash racks on the top and openings should assure continued flow under adverse conditions.

However, with time, and especially after heavy storms, debris (e.g. leaves) and sediment will collect in the pipe and pond, and should be removed. An annual cleaning of the pipe and pond is recommended.

For the first year of operation, inspection of the facilities, especially the outlet control structures, should be made after heavy storms and at least quarterly.

These inspections should pay close attention to the collection of debris around, or obstructions to, and openings in the outlet control structures.

Depending on the findings of inspection during the first year, future inspections and cleanups can be tailored accordingly.

The proposed stormwater detention facilities will be constructed by Rodney Ardolino in accordance with approved final construction plans.

R.R. at 115a (emphasis added).

In short, Applicants' maintenance plan provides substantial evidence of Applicants' compliance with the Township Code's requirement that Applicants demonstrate that they have a suitable post-construction maintenance plan.

Further, the Board's approval of Applicants' development plan was conditioned upon subsequent DEP approval of the stormwater management plan. Objector do not explain why the subsequent DEP review and approval would be

14

inadequate to confirm compliance with DEP regulations for post-construction stormwater BMPs with assurance of long-term operations and maintenance.

We also note the Board properly chose not to address Objector's specific claim that Applicants failed to provide any evidence of a right to connect to existing stormwater management facilities on Objector's property. As discussed more fully below, the issue of whether Applicants had a legal right or permission under their Maple Lane easements to connect to the stormwater facilities on Objector's property is a property rights issue that must be raised in a public court of record, not in a land use proceeding before a municipal body. Michener Appeal, 115 A.2d 367 (Pa. 1955); Gulla v. N. Strabane Twp., 676 A.2d 709 (Pa. Cmwlth. 1996).

### D. Floodplain Management Requirements
### 1. Argument

Objector further contends Applicants failed to show that their 2014 amended stormwater management plan complies with state and federal floodplain management requirements. To that end, Objector asserts the Township Code requires land development plans to show their designs comply with federal and state floodplain management guidelines. See Section 64.2.1.5 of the Township Code; R.R. at 482a.

Objector's Engineer testified before the Board that Applicants' proposed restaurant, which is to be built approximately five feet from a stream at its closest point, would be within a floodplain area because of its close proximity to

the stream. Objector asserts the record does not show that Applicants notified appropriate state and federal authorities in order for those entities to determine whether the project complied with their regulations. Therefore, Objector argues, Applicants' 2014 amended plan does not comply with the Township's Code.

## 2. Analysis

In response, Applicants argue Objector misreads Section 64.2.1.5 of the Township Code. Applicants assert the proper reading of the Township Code reflects that the purpose of the ordinance is to bring the *Township* into compliance with federal and state floodplain requirements, not to impose federal and state requirements on *developers*. Chapter 64 of the Township Code governs "Floodplain Management." See Upper St. Clair Code, §§64.1-64.9. In its entirety, Section 64.2.1 of the Township Code provides (with emphasis added):

> 64.2.1. <u>Intent – The intent of this Ordinance is to</u>:
>
> 64.2.1.1. Promote the general, health, welfare and safety of the community.
>
> 64.2.1.2. Encourage the utilization of appropriate construction practices in order to prevent or minimize FLOOD damage in the future.
>
> 64.2.1.3. Minimize danger to public health by protecting water supply and natural drainage.
>
> 64.2.1.4. Reduce financial burdens imposed on the community, its governmental units, and its residents, by preventing excessive DEVELOPMENT in areas subject to flooding.
>
> 64.2.1.5. <u>Comply with federal and state floodplain management requirements</u>.

16

Upper St. Clair Code at §64.2.1.

Applicants note the courts' recognition that a municipality should not deny a land development application based on failure to comply with laws or regulations overseen by other governmental agencies. In Morris v. South Coventry Township Board of Supervisors, 898 A.2d 1213, 1221 (Pa. Cmwlth. 2006) (quoting Bloom v. Lower Paxton Township, 457 A.2d 166, 169 (Pa. Cmwlth. 1983)), this Court stated (with emphasis added):

> [A] municipality that grants final plan approval subject to the issuance of required state permits 'reflects the fact that developer has satisfied the municipality's land use requirements, and is in conflict only with regulations of a state agency,' and that 'any legal dispute regarding the issuance of the permits should involve the developer and the agency, not the municipality.' More importantly, that provision recognizes that a final plan cannot be disproved due to a failure to have those permits.

Here, the Board granted final approval to Applicants' 2014 amended plan subject to DEP's review and approval of Applicants' stormwater management plan. In accord with Morris, any dispute over DEP's approval of Applicants' stormwater management plan could not serve as a basis for attacking the Board's final approval. Consequently, we reject Objector's contention that the Board erred or abused its discretion in conditionally approving Applicants' stormwater management plan prior to federal and state floodplain management approval. Morris.

## E. Maple Lane Easement Rights

### 1. Argument

Objector asserts Applicants' 2014 amended plan provides for a portion of Applicants' stormwater management system to be installed on or under Maple Lane, a private street Objector owns. Objector claims Applicants failed to demonstrate any easement or other right of access to Objector's property to permanently install a portion of their stormwater management facilities. However, Objector argues, the Board completely disregarded this issue. In reviewing this issue, the trial court reasoned:

> [Objector] also argues that [Applicant Ardolino] does not have appropriate easements, licenses or necessary ownership interests over Maple Lane. However, this issue is not properly before the governing body. Issues regarding title to property are not appropriate for consideration by a municipal body in a land use proceeding. The Commonwealth Court has held that 'an application for a subdivision plan which conforms to all the technical requirements of relevant ordinances cannot be denied based on deed restrictions.' Anderson v. Board of Supervisors of Price Township, 437 A.2d 1308, 1309-10 (Pa. Cmwlth. 1981). As the Court stated in Gulla v. North Strabane [Township], 676 A.2d 709, 710-11 (Pa. Cmwlth. 1996), land use matters involve public rather than private interests. Conflicts arising from private instruments of title may not be resolved in land use proceedings.

Tr. Ct., Slip Op., 4/17/15, at 3-4.

Objector asserts this case is distinguishable from Anderson and Gulla. Objector argues the Township Code creates an affirmative obligation for a land development applicant to demonstrate he possesses a valid easement right where

18

his stormwater facilities cross land owned by another party. To that end, the Township Code incorporates the Allegheny County Health Department's Rules and Regulations for Plumbing and Building Drainage (County Drainage Regulations), which require an applicant to record an easement where its stormwater facilities cross another's land, and to record covenants for shared maintenance of the easement.

Chapter 51 of the Township Code governs "Building Construction." See Upper St. Clair Code, §§51.1-51.3. Sections 51.2.5.1.1 and 51.2.5.1.2 of the Township Code provide:

> Scope: <u>The design and installation of plumbing systems, including sanitary and storm drainage, sanitary facilities, water supplies, storm water and sewage disposal in buildings shall comply with the requirements of the Allegheny County Health Department Rules and Regulations, Article IX, Plumbing and Building Drainage</u>.
>
> Administrative Authority: Administrative authority of the Allegheny County Health Department Rules and Regulations, Article IX, Plumbing and Building Drainage except storm water drainage systems external to buildings shall be defined in Definitions 300 of those Regulations; <u>however, the TOWNSHIP of Upper St. Clair shall be the administrative authority for storm water drainage systems external to buildings</u>.

R.R. at 480a (emphasis added).

Sections 51.2.7.1 and 51.2.7.2 of the Township Code provide:

19

Applicability: The provisions of this section shall govern CONSTRUCTION of all new structures as covered by this chapter.

Storm sewer connection required: Storm water runoff from all roofs, driveways, foundation drains and French drains for any new structures shall be collected, piped and connected to a storm sewer system in accordance with the [Township Code], Chapter 99, Public and Private Improvements, when a system is available. The CONSTRUCTION and connection of said sewers shall be in accordance with the Allegheny County Health Department Rules and Regulations, Article IX, Plumbing and Building Drainage, Chapter 13.

R.R.at 481a (emphasis added).

In turn, the County Drainage Regulations pertinently provide:

**AC-701.3  Public Sewers and/or Water Mains Not Available**.  Where public sewers … or water mains are not immediately available, it may become necessary to construct a private sanitary sewer, storm sewer, and/or water main to connect with a public utility. …  Private sewers and or water mains shall be constructed on the outside of building or buildings and branched into each house or building separately.  When private sewers or water mains cross another property or properties to connect with a public sanitary sewer, storm sewer and/or water main, an easement shall be recorded in the deeds of all affected property owners.  A mutual maintenance agreement shall be recorded in the deeds of all such properties connected to a private sewer or water main system to affix equal responsibility in maintaining the private sewer(s) or water main(s).  A copy of each deed shall be filed with the Administrative Authority.

R.R. at 486a-87a (emphasis added).

20

Objector contends this case is critically different from Anderson and Gulla. Objector argues that the municipal bodies in those cases did not adopt provisions expressly requiring an applicant to show documentation of a right to cross the land of another for the purpose of connecting to stormwater facilities. In Anderson, the Court reasoned that an application for a subdivision plan "which conforms to all of the technical requirements of the relevant ordinances cannot be denied based on deed restrictions." Anderson, 437 A.2d at 1309-10 (emphasis added). However, in Gulla the Court stated, "Nothing in the ordinance requires the inclusion of private easements or existing private water rights on the final plan, but most importantly the Township is not permitted to consider the private rights of individuals before granting subdivision approval." Gulla, 676 A.2d at 711 (emphasis added).

Nevertheless, Objector contends the trial court erred in determining the Board acted within its authority in approving Applicants' stormwater management plan on the basis that it met the requirements of the Township Code. In short, Objector asserts Sections 51.2.5.1.1 and 51.2.7.2 of the Township Code require that a subdivision and land development applicant comply with the County Drainage Regulations and provide evidence of a recorded easement demonstrating a right to access another's private property and a mutual maintenance agreement for the stormwater facilities. Objector argues that absent such evidence, the trial court could not lawfully conclude that Applicants' stormwater management plan complied with the Township Code. Therefore, the trial court erred in affirming the Board's decision.

21

In response, Applicants contend Objector failed to raise before the Board the issue of whether they met the Township Code's requirement of compliance with the County Drainage Regulations' requirement of a recorded easement and mutual maintenance agreement indicating their right to connect to storm sewer facilities on another's property. Applicants argue that nowhere in Objector's presentation to the Board did Objector suggest that Applicants failed to show that a recorded easement existed. Rather, Objector argued to the Board that Applicants had no legal right to use Maple Lane for their storm sewer facilities. Again citing McGlynn, Applicants assert that issues not raised before the governing body in a land use matter are waived.

Further, in the event this Court should consider Objector's argument, Applicants contend it has no merit. This is because Objector's deed indicates its property is subject to easements for water, sewer and gas lines, and for the maintenance, operation and repair of sanitary sewers. See R.R. at 214a-15a. In particular, Objector's deed provides:

> UNDER AND SUBJECT to easements for maintenance, operation and repair of sanitary sewers as set forth in the Declaration of Taking by the Municipal Authority of the Township of Upper St. Clair filed in the Court of Common Pleas of Allegheny County, Pennsylvania, No. 1952, January, 1973 and of record in the Office of the Recorder of Deeds in DBV 5158, page 286.

> * * * *

> TOGETHER with and subject to an easement in common with the Grantor and other parties for the purpose of ingress, egress and regress to and from Boyce Road and the installation, maintenance, repair and replacement of utility lines on, under and over the same, said easement

22

being 30 feet in width throughout, the easterly line of which is the easterly line of the above-described premises, the same being sometimes known as Maple Lane.

R.R. at 214a-15a (emphasis added).

Applicants argue that although Objector may dispute the breadth of Applicants' rights under the easement, that dispute can only be resolved by a quiet title or enforcement action in the courts.  Michener Appeal; Gulla.

## 2. Analysis

### i. Waiver

First, we recognize that Objector preserved the issue of whether Applicants demonstrated a right to utilize Objector's property for their stormwater facilities.  During the Board's October 2014 hearing, Objector's counsel raised this issue.  See N.T., 10/6/14, at 21; R.R. at 302a-07a.  After a discussion, the Board determined Applicants submitted the "appropriate documentation" and that the Township "felt the application was complete and able to be reviewed."  R.R. at 306a.  The Board further rejected Objector's argument that the "alleged dispute over the title would be a reason to deny the plan."  R.R. at 306a-07a.

Nevertheless, based on our review of the record, we agree with Applicants' assertion that Objector did not raise before the Board the issue of Applicants' amended plan's failure to comply with Sections 51.2.5.1.1 and 51.2.7.2 of the Township Code and Section AC-701.3 of the County Drainage Regulations by not providing evidence of a recorded easement demonstrating a

23

right to access another's private property. In particular, at no point before the Board did Objector argue that Applicants' plan must fail because it did not include a recorded mutual maintenance agreement as required by the County Drainage Regulations. Rather, Objector raised these issues for the first time on appeal. Therefore, we conclude Objector waived the issue of Applicants' compliance with the recorded easement and mutual maintenance agreement requirements in the County Drainage Regulations. McGlynn.

Nonetheless, the record includes Objector's deed, which provided evidence of Applicants' easements over Objector's property, including a utility easement over Maple Lane. R.R. at 213a-15a. Also, Applicants' 2011 plan and 2014 amended plan each included post-construction maintenance plans for the proposed stormwater facilities. R.R. at 27a, 115a.

**ii. Merits**

Turning to the merits, Objector disputes Applicants' claim that Objector's deed grants them a property right to install private stormwater drainage lines on Objector's property. Objector asserts the language "installation, maintenance, repair and replacement of utility lines" does not encompass stormwater drainage facilities. However, as the trial court recognized, it is well settled that issues concerning property rights in instruments of title must be resolved in the courts. See Michener Appeal (any consideration of building restrictions placed on a property by private parties has no place in proceedings under the zoning laws for a building permit or variance); Anderson (subdivision plan must be approved if it complies with the applicable regulations; a subdivision

plan that conforms to all the technical requirements cannot be denied based on deed restrictions).

Further, in <u>Gulla</u>, this Court, citing <u>Michener Appeal</u> and <u>Anderson</u>, observed:

The gravamen of Gullas' complaint is that, by deed, they have been granted an interest in spring water flowing on the Lindencreek property. <u>Gullas assert that this fact entitles them to notice of the subdivision proceedings to allow them to assert their claim before the Township and thus, modify the subdivision plan to locate and reflect those rights.</u> However, the law in this Commonwealth is that enforcement of private rights has no application in a zoning dispute. [Michener Appeal]. If such covenants are violated, the remedy is enforcement of the restrictions in a court by the persons entitled to enforcement, not by way of zoning proceedings. County of Fayette v. Cossell, [430 A.2d 1226 (Pa. Cmwlth. 1981)]. Courts, in trying zoning cases, ordinarily exclude evidence of private restrictions and, in trying a private restriction case, will exclude evidence of zoning on grounds of immateriality. Zoning laws are enacted under the police power and interest of public health, safety and welfare; there is no concern whatever with building or use restrictions contained in instruments of title and which are created merely by private contracts. [Michener Appeal].

Lindencreek demonstrated to the trial court its right to subdivide the real estate. An application for a subdivision plan which conforms to all the technical requirements of relevant ordinances cannot be denied on deed restrictions. [Anderson]. Thus, we hold the trial court correctly found that the Gullas did not have standing to appeal the subdivision approval process.

<u>Gulla</u>, 676 A.2d at 710-11 (emphasis added).  What is more, although nothing in the ordinance in <u>Gulla</u> required the inclusion of private easements, we recognized that "<u>most importantly, the Township is not permitted to consider the private rights of individuals before granting subdivision approval</u>."  <u>Gulla</u>, 676 A.2d at 711 (emphasis added).

Further, in <u>Borough of Braddock v. Allegheny County Planning Department</u>, 687 A.2d 407 (Pa. Cmwlth. 1996), we noted that neither the county planning department, a local administrative body, nor the trial court on appeal, would be the appropriate forum for addressing complex title questions involving competing ownership claims to an abandoned railroad line.  <u>Id.</u>  Rather, those issues should be resolved in a quiet title action.  <u>Id.</u>

Following <u>Braddock</u>, we again recognized that a zoning board is an inappropriate vehicle to deal with issues of title which are properly resolved in a quiet title action.  <u>Kaufman v. Borough of Whitehall Zoning Hearing Bd.</u>, 711 A.2d 539 (Pa. Cmwlth. 1998).  In <u>Kaufman</u>, the landowners sought a building permit to erect a fence across the rear yards of their neighboring properties.  However, the 1939 plans for that development included a street between the landowners' property known as Threnhauser Drive.  Although the Borough never accepted or developed Threnhauser Drive, residents of the Borough used that proposed street as a pedestrian walkway.  Ultimately, the landowners obtained title to Threnhauser Drive in a 1986 quiet title action and sought a building permit to erect a fence to prevent the property from being used as a walkway.

The Borough's code officer, however, denied the permit because of a possible prescriptive easement for the pedestrian walkway. On appeal, the zoning board affirmed the denial, noting the possibility of such an easement. In particular, the board recognized that both the landowners and easement users had apparently legitimate claims and thus it would be inappropriate for the board, acting in an official capacity, to favor one claim over the other.

On appeal, the trial court reversed on the basis that the quiet title action awarded landowners exclusive title to the property, thereby extinguishing any easement. Although the quiet title order did not specifically deny the existence of a pedestrian easement, it neither granted nor recognized such an easement.

The Borough appealed. In affirming the trial court, we reasoned:

> Although the Zoning Board did not have the authority to determine whether a prescriptive easement existed, the Zoning Board did in fact arbitrate a private dispute over real estate. In Pennsylvania, it is well established that zoning laws have no application to the resolution of disputes between private parties over real estate interests. [Cossell]. This Court has also recognized that the enforcement of private rights has no application in a zoning dispute. [Gulla].

> \* \* \* \*

> [Once] the prerequisite conditions required by a zoning ordinance have been fulfilled, the issuance of a building permit is 'merely ministerial.' Vagnoni v. Brady, [218 A.2d 235, 237 (Pa. 1966)]. Here, [the landowners] presented surveys of their properties, a deed, the trial court's order of 1986, and a construction drawing of the proposed fence with dimensions. Such documents surely provided sufficient information for the code enforcement officer or Zoning Board to decide whether the building permit requirements were met in this case. The only

27

> action left to be taken at that point was to issue [the landowners] a permit to erect their fence.

Kaufman, 711 A.2d at 541-42 (emphasis added).

Likewise here, the record contains Objector's deed, which indicates that Applicants' Maple Lane easement permits the installation and maintenance of utility lines. R.R. at 213a-15a. Whether this encompasses the installation and maintenance of stormwater facilities is an issue that must be decided by the courts, not by a local government body in a land use proceeding. Michener Appeal; Kaufman; Braddock; Gulla; Anderson.

Notably, the parties in the present case indicated at oral argument before this Court that they are currently pursuing a legal determination of Applicants' easement rights in a separate quiet title action in the trial court. Therefore, we are optimistic that these issues will be timely resolved in the appropriate forum.

**IV. Conclusion**

Nevertheless, we discern no error or abuse of discretion by the Board in determining that the stormwater management plan in Applicants' 2014 amended plan complies with the Township Code's subdivision and land development requirements. As discussed above, the Board's determinations are supported by substantial evidence.

In addition, we find no error in the Board's determination that, as a municipal administrative body in a land use proceeding, it lacked the authority to

resolve the legal issues of whether Applicants possess the appropriate property rights to install and maintain stormwater facilities on Maple Lane. <u>Michener Appeal</u>; <u>Kaufman</u>; <u>Braddock</u>; <u>Gulla</u>; <u>Anderson</u>. Therefore, we affirm the trial court's order.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BR Associates, a Pennsylvania    :
General Partnership,    :
         Appellant    :
   :
   :
     v.    :
   :
Board of Commissioners of the    :    No. 775 C.D. 2015
Township of Upper St. Clair    :
   :
     v.    :
   :
Rodney Ardolino and Tammy    :
Ardolino, husband and wife,    :
and Joyce Mendenhall    :

# O R D E R

**AND NOW**, this 5th day of May, 2016, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge