# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Brown, aka Fred Heffelfinger, Jr., :
                Appellant    :
                            : No. 1260 C.D. 2017
      v.               : Argued: September 18, 2018
                            :
Tioga Township Zoning Hearing Board : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE ROBERT SIMPSON, Judge (P)
                   HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                  **FILED:  November 14, 2018**

This zoning appeal deals with a nonconforming use of a property and whether the primary use changed.  In particular, Fred Brown a/k/a Fred Heffelfinger, Jr. (Brown) appeals from an order of the Court of Common Pleas of Tioga County[1] (trial court) that affirmed a decision of the Tioga Township (Township) Zoning Hearing Board (Board).  The trial court held Brown's current nonconforming use of his property (Property) for adult entertainment was not sufficiently similar to the prior use as a bar and restaurant to prevent enforcement of the Township's zoning ordinance.  Upon review, we affirm.

## I. Background

The Property is located on Route 287 in the Township.  Tr. Ct., Slip Op., 8/9/17, Finding of Fact (F.F.) No. 2.  Brown or his family has operated a business on the Property since before 1990. F.F. No. 9.  The business was originally

---

[1] The Honorable John B. Leete, Senior Judge, specially presided.

known as Fred's Woodshed and later as Fred's Lobster Garden. F.F. No. 12. From the late 1980s until about 2009, it was primarily a restaurant, bar, and motel. Id. During that period, there was occasional adult entertainment on the premises.

Sometime around 2009, the business surrendered its liquor license. F.F. No. 15. The business's sales tax license was revoked in 2011. Id. For about a year around this period, a swap shop operated on the Property. Id. However, adult entertainment was the main business at that point; the swap shop was incidental, providing a place for customers to sell or trade items for money to spend on the adult entertainment. F.F. No. 17. Of significance, although the Property's outward appearance suggested little activity of any kind during that period, the adult entertainment was in fact continuing. F.F. No. 26.

The timing of events is somewhat vague, but by 2013 the sole business on the Property was adult entertainment. F.F. No. 27. The business is currently known as Fred's Gentlemen's Club. F.F. No. 21. It is open three nights a week and exclusively provides adult entertainment. Id. Customers bring their own alcoholic beverages. Id. No food or beverages are sold on the Property. Id.

The Township enacted a zoning ordinance in 2005. F.F. No. 5. It is undisputed that the Property is located in District No. 4, Commercial/Industrial, in which the zoning ordinance does not permit adult entertainment.[2] F.F. No. 4. In 2016, the Township issued a zoning enforcement notice relating to Brown's business of providing adult entertainment on the Property. F.F. No. 3. After a hearing, the

---

[2] The zoning ordinance does permit adult entertainment in District No. 5, Special Agricultural/Industrial.

2

Board rejected Brown's argument that his use of the Property as an adult entertainment business predated 2005. F.F. No. 6. The Board also denied Brown's request for a variance. Id.

Brown appealed the Board's decision to the trial court, which held hearings in April and July of 2017. F.F. Nos. 7, 8. The trial court concluded: "While appellant Brown permissibly expanded his adult entertainment over time, he changed the essential nature of his business by closing the popular bar, restaurant, and music portion of the business, thereby violating the ordinance." Tr. Ct., Slip Op., Concl. of Law No. 2. Accordingly, the trial court affirmed the Board's decision that Brown's current business is not a permissible nonconforming use of the Property, although the court adopted a different rationale.

This timely appeal by Brown followed.

## II. Issues

On appeal,[3] Brown argues the doctrine of laches bars the Township's enforcement of the zoning ordinance. He contends several important witnesses have died, remaining witnesses' memories, including his own, have faded, and supporting documentary evidence has disappeared because of the Township's purported delay

---

[3] When a trial court reviewing a zoning decision takes additional evidence on the merits, this Court reviews the trial court's findings of fact and conclusions of law for abuse of discretion or errors of law. Newtown Square, E., L.P. v. Twp. of Newtown, 38 A.3d 1008 (Pa. Cmwlth. 2011), aff'd, 101 A.3d 37 (Pa. 2014). This standard of review applies even where, as here, the trial court takes only limited additional evidence on the merits. Id. An abuse of discretion occurs when the trial court's findings are not supported by substantial evidence in the record. Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd., 944 A.2d 832 (Pa. Cmwlth. 2008).

from 2005 to 2016 in issuing an enforcement notice. Brown asserts he suffered prejudice because the delay hindered his ability to prove the extent to which he was using the Property for adult entertainment when the Township enacted the zoning ordinance in 2005. Brown further contends his laches defense applies equally to the Township's delay in alleging he closed the Property from about 2009 to 2010.[4]

In response, the Board argues Brown abandoned his nonconforming use of the Property because of the revocation of his sales tax license from 2009 to 2010. The Board contends Brown could not legally continue to operate the adult entertainment business on the Property without a sales tax license. The Board also points out that the final revocation of Brown's sales tax license did not occur until 2011. The Board argues its five-year delay from that point did not rise to the level of laches.

### III. Discussion

The equitable defense of laches arises where, under the facts and circumstances of the particular case, one party shows a want of due diligence in asserting a claim, to the prejudice of the other party. Weinberg v. Commonwealth, 501 A.2d 239 (Pa. 1985). Because laches is an affirmative defense, the party asserting it has the burden of proof. Id.; Shah v. State Bd. of Med., 589 A.2d 783 (Pa. Cmwlth. 1991).

---

[4] At oral argument, Brown raised a constitutional property right issue. To the extent he intended to assert that as a separate issue on appeal, he neither raised nor argued any such issue in his appellate brief. Consequently, he waived that issue. Pa. R.A.P. 2116(a) (no issue will be considered unless the statement of questions lists or reasonably suggests it); Kull v. Guisse, 81 A.3d 148 (Pa. Cmwlth. 2013) (same; citing Rule 2116(a)); Whitehall Manor, Inc. v. Planning Comm'n, 79 A.3d 720 (Pa. Cmwlth. 2013) (issue is deemed waived when party fails to explain or develop it in his brief).

The applicability of the laches defense in a given matter is a question of fact. Coney Island, II, Inc. v. Pottsville Area Sch. Dist., 457 A.2d 580 (Pa. Cmwlth. 1983). Accordingly, courts determine it on a case-by-case basis, considering the individual facts and circumstances. In re Lokuta, 964 A.2d 988 (Pa. Cmwlth. 2008) (en banc); Shah.

Under settled Pennsylvania law, a municipality has authority to enact zoning ordinances under its police power. BR Assocs. v. Bd. of Comm'rs Twp. of Upper St. Clair, 136 A.3d 548 (Pa. Cmwlth. 2016); Plaxton v. Lycoming Cty. Zoning Hearing Bd., 986 A.2d 199 (Pa. Cmwlth. 2009). Several decisions have held that the defense of laches does not apply in municipal enforcement actions exercising police powers. See, e.g., Adams Outdoor Adver., Ltd. v. Dep't of Transp., 860 A.2d 600 (Pa. Cmwlth. 2004); Clearview Land Dev. Co. v. Commonwealth, 327 A.2d 202 (Pa. Cmwlth. 1974) (en banc). Nonetheless, the defense has occasionally been asserted successfully in zoning enforcement actions. See, e.g., Heidorn Appeal, 195 A.2d 349 (Pa. 1963); Haverford v. Spica, 328 A.2d 878 (Pa. Cmwlth. 1974) (citing Heidorn); see also Weinberg (citing Heidorn with approval).

The doctrine of laches, as it applies in this context, is similar to other equitable defenses against enforcement of zoning ordinances, including the defenses of vested right, variance by estoppel, and equitable estoppel. This Court has observed that these various labels overlap each other, such that rigid distinctions among them are not necessarily useful. See In re Kreider, 808 A.2d 340 (Pa. Cmwlth. 2002). All these equitable defenses have common elements of good faith (essentially, clean hands) and detrimental reliance on the part of the property owner,

as well as hardship resulting from enforcement.  Id.  Here, despite overlap in the various equitable defenses, Brown couches his argument in terms of laches. However, our analysis could apply equally to a defense under any of the other related labels.

**A. Laches and Loss of Evidence**

The party asserting laches must present a stronger case, including a higher degree of prejudice, against a government entity than against a private party. Adams Outdoor Adver. (citing St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs., 733 A.2d 677 (Pa. Cmwlth. 1999) and Weinberg); Shah.  A party may establish the requisite degree of prejudice where witnesses die or become unavailable or records are lost or destroyed.  Adams Outdoor Advert. (citing Weinberg); Shah.

Here, the trial court held a supplemental hearing to address the laches issue.  Brown offered evidence that several potential witnesses died and numerous financial and other documentary records became unavailable during the period of the Township's delay in seeking enforcement of the zoning ordinance.  Brown insisted the unavailable witnesses and documents would have demonstrated regular and ongoing incidental use of the Property for adult entertainment throughout the entire period during which its main use was as a restaurant and bar.  Brown also appeared to contend the lost evidence would have supported his claim that he did not abandon the adult entertainment usage during or after 2009.

The trial court issued a separate supplemental opinion rejecting Brown's laches defense.  Relying on Heidorn and Springfield Township v. Kim, 792

6

A.2d 717 (Pa. Cmwlth. 2002), the trial court found that Brown did not demonstrate any substantial financial expenditure in reliance on his ability to continue using the Property for adult entertainment.

The trial court did not consider whether Brown's evidence was sufficient to demonstrate prejudice from loss of witnesses and documents. However, the trial court's error in that regard, if any, was harmless in the circumstances of this case. Any loss of evidence allegedly arising from the Township's delay in enforcement of the zoning ordinance is irrelevant.

As discussed above, Brown argues the unavailability of witnesses and documents prejudiced him in two ways. First, he contends he lost evidence that would have proven his use of the Property included adult entertainment throughout the entire period from about 1990 and ongoing. Second, he asserts he lost evidence that would have proven he did not abandon the adult entertainment usage during or after 2009. However, proving either or both of these contentions would not demonstrate prejudice entitling Brown to relief.

Regarding his first argument, Brown does not dispute that from at least 1990 until sometime after 2005, the Property's main use was as a restaurant and bar. The adult entertainment, even assuming it occurred throughout that period, was merely incidental to the restaurant and bar. The trial court specifically found: "The premises, originally known as Fred's Woodshed and later as Fred's Lobster Garden was primarily a restaurant, bar and motel from the late 1980s to about 2009." F.F. No. 12. "During this period of time, according to testimony, there was occasional

7

use of the premises for adult entertainment, although it remained a popular din[ing], bar and motel destination." F.F. No. 13. Brown does not dispute these findings; indeed, the trial court credited Brown's testimony on the Property's use.

Regarding Brown's second argument, there is no genuine issue of abandonment of a use. Although the Board argued that Brown necessarily abandoned his use of the Property by reason of losing his sales tax license, the trial court did not so find. To the contrary, the trial court found as a fact that even while Brown was allowing a swap shop to operate on the Property, he was continuing to provide adult entertainment. F.F. Nos. 16-17, 26. The trial court apparently credited Brown's testimony that the swap shop was merely an incidental use, while the adult entertainment was the primary use by that time. F.F. No. 17.

Additional evidence on either of these issues would not help Brown in this case. The trial court's decision did not rest on either the failure of Brown's laches defense or a purported abandonment of the premises. Rather, the trial court based its decision on the change in Brown's main restaurant/bar use of the Property.

**B. Change in Use of the Property**

The trial court determined, as a matter of law, that the undisputed shift in use of the Property from mainly a restaurant and bar to exclusively adult entertainment with no beverage or food service was not a permissible expansion of the prior incidental nonconforming use. We agree.

8

As summarized by a respected commentator in this field, Robert S. Ryan,

> There is a difference between the treatment accorded an owner who seeks to continue, modernize, or expand his existing use and the owner who seeks to add a new nonconforming use, or to change from one nonconforming use to another. The starting point in any analysis of 'addition of use' or 'change of use' cases is recognition of the fact that, if the use really is being changed or a new use is being added, neither is within the protection afforded by constitutional principles to existing nonconforming uses.

Robert S. Ryan, PENNSYLVANIA ZONING LAW AND PRACTICE, §7.6.1 (2001).

Brown argues this case is analogous to Foreman v. Union Township Zoning Hearing Board, 787 A.2d 1099 (Pa. Cmwlth. 2001). In Foreman, the property owner operated a bar and restaurant that became a pre-existing nonconforming use upon the township's enactment of a zoning ordinance. At some point, allegedly predating the zoning ordinance, the owner changed the business's name to Sensations Bar & Grill and brought in dancers as adult entertainment. After enactment of the zoning ordinance, the frequency of the adult entertainment increased over time from its original two events per month to three nights a week, and the activities expanded to include such events as wet t-shirt contests and lingerie shows as well as male and female dancing.

This Court found the increased adult entertainment activity in Foreman was a permissible expansion of the pre-existing nonconforming use. The Court reasoned that "the main characteristics of Foreman's business had not changed from the bar/restaurant to a new establishment mainly devoted to adult entertainment.

9

Foreman still serves food and drinks daily and offers the adult entertainment only three nights a week from 9:30 p.m., not throughout the entire daily business hours….” Id. at 1104.

In Foreman, this Court distinguished its prior decision in Philm Corporation v. Washington Township, 638 A.2d 388 (Pa. Cmwlth. 1994). In Philm, the owner of the property at issue operated a restaurant/tavern for many years. That use predated the township zoning ordinance and continued after enactment of the ordinance, as a pre-existing nonconforming use. Later, however, the property owner renamed the business The Fox and began featuring continuous live go-go dancing from noon to midnight six days a week. He served little food, reduced the menu severely, and no longer maintained any wait staff. Thus, the principal use of the premises changed from a restaurant/bar to an adult entertainment facility.

In Philm, this Court held the chief activity on the premises changed significantly, from serving food and drink with incidental entertainment to providing adult entertainment with incidental food and drink service. Therefore, we concluded the new nonconforming use of the property was not of the same general character as the prior use and was not sufficiently similar to qualify as a continuation of the pre-existing nonconforming use.

Here, the trial court rejected Brown’s analysis under Foreman and found the facts more closely resemble those in Philm. We agree. Brown argues that like the owner in Foreman, he provided adult entertainment before the Township enacted its zoning ordinance, and he merely increased that pre-existing use.

10

However, this Court's reasoning in <u>Philm</u> indicates the critical distinction between the two decisions is not the timing of the introduction of adult entertainment. Rather, <u>Foreman</u> concerned an expansion of an incidental use without a change in the main use, while <u>Philm</u> involved a change in the main use itself. Brown, like the owner in <u>Philm</u>, changed the main use of the Property from a restaurant/bar to adult entertainment. In fact, the contrast between uses here is even more stark than that in <u>Philm</u>, as Brown no longer serves any food or drinks at all, using the Property solely for adult entertainment. Thus, he has completely eliminated the Property's former primary use.

In these circumstances, Brown's use of the Property does not constitute a continuation or permissible expansion of a pre-existing nonconforming use.

## IV. Conclusion

Based on the foregoing, we affirm the trial court's decision.

_____

ROBERT SIMPSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Brown, aka Fred Heffelfinger, Jr., :
                             Appellant   :
                                      :   No. 1260 C.D. 2017
                      v.             :
                                        :
Tioga Township Zoning Hearing Board  :

# **O R D E R**

      **AND NOW**, this 14th day of November, 2018, the order of the Court of Common Pleas of Tioga County is **AFFIRMED**.

 

                                 _____

                                 ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Brown, aka Fred Heffelfinger, Jr.,    :
              Appellant            :
                                    :
            v.                  :    No. 1260 C.D. 2017
                                    :    Argued: September 18, 2018
Tioga Township Zoning Hearing Board    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge (P)
                 HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: November 14, 2018

Before the adoption of zoning regulation by Tioga Township, Fred Brown offered adult entertainment at his restaurant and bar. In 2005, the Tioga Township Zoning Ordinance (Zoning Ordinance)[1] made adult entertainment unlawful in the Industrial/Commercial District, where Brown's establishment is located. Because his adult entertainment is a lawful non-conforming use, I respectfully dissent from the majority's contrary holding.

Brown has long used his land to operate a motel, restaurant and bar, where he offered adult entertainment several times a month. In 2005, the Township enacted the Zoning Ordinance, which authorized restaurants and motels in the Industrial/Commercial Zoning District but not adult entertainment. *See* ZONING ORDINANCE, Article V; R.R. 156a. Adult entertainment was authorized only in the Special Agricultural/Industrial District. ZONING ORDINANCE, Article V; R.R. 156a.

---

[1] TIOGA TOWNSHIP ZONING ORDINANCE, adopted May 10, 2005, by Ordinance No. 57 (ZONING ORDINANCE). Reproduced Record at 138a-193a (R.R. __).

However, the 2005 enactment did not affect the lawfulness of Brown's adult entertainment in the Industrial/Commercial Zoning District. Article IX of the Zoning Ordinance specifically provides that uses that were lawful prior to the adoption of zoning would be allowed to continue "until they are removed." ZONING ORDINANCE, §900.1. Section 902 further addresses non-conforming uses as follows:

> Where, at the effective date of adoption or amendment of this ordinance, lawful use of land exists that is made no longer permissible under the terms of this ordinance as enacted or amended, such use may be continued, so long as it remains otherwise lawful, subject to the following provisions:
>
> > 902.1 – No such non-conforming use shall be enlarged or increased, nor extended to occupy a greater area of land than was occupied at the effective date of adoption or amendment of this ordinance, except as specified by Section 900 of this ordinance.
> >
> > 902.2 – No such non-conforming use shall be moved in whole or in part to any other portion of the lot or parcel occupied by such use at the effective date of adoption or amendment of this ordinance.
> >
> > 902.3 – If any such non-conforming use of land is abandoned by discontinuance for any reason for a period of more than twelve (12) consecutive months, any subsequent use of such land shall conform to the regulations specified by this ordinance for the district in which such land is located.

ZONING ORDINANCE, §902.

This Court has explained, with regard to continuing a lawful non-conforming use, that

> [a] proposed use need not be identical to the preexisting use.…
> As long as the proposed use is sufficiently similar to the use that

MHL-2

existed at the time of the enactment of the zoning ordinance, the proposed use may not be characterized as a new or different use.

*Foreman v. Union Township Zoning Hearing Board*, 787 A.2d 1099, 1103 (Pa. Cmwlth. 2001) (citations omitted). A lawful continuation of a non-conforming use allows for natural expansion. The Pennsylvania Supreme Court has explained that

> [t]he doctrine of natural expansion … permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use…. [W]e stated that "once it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth."

*Limley v. Zoning Hearing Board of Port Vue Borough*, 625 A.2d 54, 56 (Pa. 1993). (quotations and citations omitted).

Brown's use of his property for adult entertainment is a lawful continuation of a non-conforming use. The increase in the number of offerings of such entertainment from once or twice a month to once or twice a week did not change the lawfulness of Brown's non-conforming use. This Court has stated that "[t]he mere increase in intensity of the use does not justify a finding of a new or different use." *Foreman*, 787 A.2d at 1103.

The Court of Common Pleas of Tioga County (trial court) acknowledged that "Brown permissibly expanded his adult entertainment over time[,]" but mistakenly reasoned that because he stopped the operation of his motel and restaurant, which were conforming uses, he lost his ability to continue his non-conforming use. Trial court op., 8/9/2017, at 3; Conclusion of Law No. 2. However,

the continued use of the motel and restaurant was irrelevant to Brown's ability to continue his non-conforming use.[2]

There is no question that Brown complied with the conditions for continuing a non-conforming use in Section 902 of the Zoning Ordinance. He did not enlarge the amount of land used for adult entertainment, move the entertainment to an "other portion of the lot or parcel" or abandon this non-conforming use. ZONING ORDINANCE, §902.1 - §902.3. Notably, the Township asserted that from 2009 to 2010 Brown's property was used as a swap shop. However, the trial court found that, "[d]uring the swap shop era encompassing approximately one and one-half years, … there was adult entertainment on the premises." Trial court op., 8/9/2017, at 3, Finding of Fact No. 26. Thus, the trial court found in Brown's favor on abandonment.

The trial court stated that Brown "changed the essential nature of his business by closing the popular bar, restaurant and music portion of his business." *Id.* However, Brown's restaurant and motel were lawful uses *both before and after* the enactment of the Zoning Ordinance. The only non-conforming use of Brown's land was the adult entertainment; under the express terms of Article IX of the Zoning Ordinance, it continued to be lawful as a non-conforming use.[3]

---

[2] At the hearing, Ronald Stevens, a member of the Township's Planning Commission and Zoning Hearing Board, testified that the property had been primarily used for "selling food, selling alcohol and renting the motel[; …] that's why [Brown] was not grandfathered because selling alcohol, food and motel was legal in the zone that he existed." Notes of Testimony, 4/28/2017, at 55 (N.T. __); R.R. 78a.

[3] Indeed, the Township does not contend that the adult entertainment was an accessory use or that it cannot be the basis for establishing a non-conforming use.

MHL-4

The trial court attempted to shoehorn Brown's adult entertainment into *Philm Corporation v. Washington Township*, 638 A.2d 388 (Pa. Cmwlth. 1994). It is not a good fit.

In *Philm,* the township enacted a zoning ordinance that prohibited the placement of a restaurant and bar in the R-2 zoning district. At issue was a restaurant and bar that were established prior to the enactment of zoning and, thus, continued as a lawful non-conforming use. Sometime later, the owner renamed the business, changed the structure, reduced the restaurant menu and, for the first time, introduced entertainment by live go-go dancers. This Court held that the change from a restaurant and bar to an adult entertainment facility was not a continuation of a non-conforming use.

*Philm* is inapposite because it dealt with a multi-use property, where each business use was non-conforming. By contrast, Brown's motel and restaurant are expressly permitted in the Industrial/Commercial District. It is irrelevant that they have been abandoned. The only nonconforming use of Brown's land was the adult entertainment, and it has continued lawfully under the terms of the Zoning Ordinance. Unlike *Philm,* there is no evidence or finding that Brown made structural changes to his establishment, placed adult entertainment in another place in the building not previously devoted to this use or introduced a totally new type of entertainment. ZONING ORDINANCE, §902. The majority's reliance on *Philm* is misplaced.

Perhaps if Brown's non-conforming use involved the sale of penny candy twice a week, instead of adult entertainment, we would not be here today. However, the nature of Brown's business should not be a factor in applying the Zoning Ordinance. In any event, on this record, the motel and restaurant uses that

MHL-5

the majority incorrectly labels the "main" uses are irrelevant to determining whether Brown's adult entertainment is a lawful non-conforming use. For these reasons, I would reverse the trial court.

_____

MARY HANNAH LEAVITT, President Judge
