# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Appeal of AMA/American Marketing Association, Inc. from the Decision of the Borough Council of Ambler Borough, dated October 15, 2013 approving the Land Development Plan known as Ambler Crossings for property of Maple Avenue Park Partners, LLP Block-Unit 01028-001 Parcel Number 01-00-02944-00-7 | : : : : : : : : : : : | No. 2023 C.D. 2015 |
| | : | |
| Appeal of: AMA/American Marketing Association, Inc. | : : | |
| | | |
| In Re: Appeal of AMA/American Marketing Association, Inc. from the Decision of the Borough Council of Ambler Borough, dated October 15, 2013 approving the Application for Conditional Use for Land Development known as Ambler Crossings for property of Maple Avenue Park Partners, LLP Block-Unit 01028-001 Parcel Number 01-00-02944-00-7 | : : : : : : : : : : : | No. 2024 C.D. 2015 Argued: May 13, 2016 |
| | : | |
| Appeal of: AMA/American Marketing Association, Inc. | : : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                           **FILED: June 14, 2016**

In these consolidated zoning and land development appeals, AMA/American Marketing Association, Inc. (Objector) asks whether the Court of Common Pleas of Montgomery County[1] (trial court) erred in affirming the decisions of the Ambler Borough Council (Council) that granted approval to Maple Avenue Park Partners, LLP's (Applicant) application for a conditional use and its preliminary/final land development plan for its proposed apartment complex. Objector asserts the grant of Applicant's conditional use application and preliminary/final land development plan constitutes an error of law or abuse of discretion where Council's decisions required unauthorized variances and were based on findings not supported by substantial evidence. Upon review, we affirm.

## I. Background

Applicant owns property with frontage on Chestnut Street in the Borough of Ambler (Borough), Montgomery County (property). Objector also owns property with frontage on Chestnut Street, which adjoins the property. Both properties lie within the Borough's RO Redevelopment Overlay district. The RO district provides for the development of a property as a Transit-Oriented Development (TOD), which permits, among other things, various types of residential development. TODs are permitted by conditional use in the RO district.[2]

---

[1] The Honorable Steven C. Tolliver presided.

[2] In its brief, Council sets forth the following additional background. For many years, the Borough was a thriving company town centered on the manufacture of asbestos. Some of the byproduct from the asbestos manufacturing was dumped on a particular tract of land that eventually became a Superfund site, was remediated and ultimately subdivided into four smaller parcels. Objector owns one of those parcels, and seeks to develop it. Applicant owns land **(Footnote continued on next page…)**

1

In 1989, Nicolet, Inc. (Nicolet) granted easements in favor of four parcels that resulted from a subdivision of its original parcel. The owners of the four lots were granted access across a series of private driveways that were created throughout Nicolet's original property. The Borough points out that in 1988 it approved a subdivision agreement for the parcels, which was the basis for Nicolet's later grant of easements.

In 2013, Applicant filed a conditional use application and a land development plan with Council seeking to construct an apartment complex with an amenity building on the property, known as Ambler Crossings. Council held a hearing on the conditional use application, at which counsel for Objector appeared.

At the hearing, Applicant presented the testimony of its engineer, Keith Ottes, P.E. (Applicant's Engineer) in order to establish compliance with the conditional use standards set forth in the 1996 Zoning Ordinance of Ambler (zoning ordinance). For its part, Objector focused on a 1989 Declaration of Covenants, Conditions and Restrictions (Declaration) and an alleged private easement created under that Declaration. In essence, Objector asserted, if approved, the Ambler Crossing development would obstruct Objector's use of the alleged easement, and Council should deny Applicant's conditional use application

---

**(continued…)**

adjacent to Objector's parcel that was also part of the original Superfund site. Each party opposes the other party's development efforts.

In the related appeals docketed at 643 and 644 C.D. 2015, we addressed Council's denial of Objector's conditional use application and final land development plan. See In re Appeal of AMA/Am. Mktg. Ass'n, Inc. (Pa. Cmwlth., Nos. 643, 644 C.D. 2015, filed June 14, 2016) (unreported).

2

on that basis. Objector also asserted Applicant's plans did not reflect the existence of the easement. Nevertheless, Objector did not specifically challenge Applicant's compliance with the general or specific conditional use criteria set forth in Sections 27-413(1)(D) and 27-2703(E)(4) of the zoning ordinance, respectively.

In response to discussions surrounding the Declaration, Council's Solicitor advised counsel for Applicant and Objector, as well as Council, that the alleged easement involved a private property right issue, and, in accordance with Pennsylvania law, private property right concerns are not properly considered or determined in a land use application.

At the conclusion of the hearing, Council voted unanimously to grant Applicant's conditional use application.[3] Immediately thereafter, at its regularly scheduled meeting, Council voted to approve Applicant's preliminary/final land development plan. Objector appealed both approvals to the trial court.

Before the trial court, Objector filed a motion to supplement the record created before Council. The trial court denied Objector's request.

Ultimately, without taking additional evidence, the trial court affirmed Council's approvals of Applicant's conditional use application and

---

[3] A copy of Council's written decision approving Applicant's conditional use application is neither attached to Objector's brief nor included in the Reproduced Record. Further, our search of the voluminous certified record does not reveal the existence of a written decision on Applicant's conditional use application. No party takes issue with this apparent omission. Moreover, for the reasons discussed below, the legal challenge raised by Objector to Council's grant of Applicant's conditional use application can be resolved based on the existing record.

3

preliminary/final land development plan. Objector appealed, and the trial court directed it to file a concise statement of the errors complained of on appeal, which it did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a) in which it explained (with emphasis added):

Sections 27-413.1(B) and 27-413.1(E)(1)(b)-(c) of the [zoning ordinance] state that an applicant for a conditional use has the burden of persuasion in proving compliance with both general and specific criteria set forth in the [zoning ordinance]. Section 27-413[(1)](D) sets forth general criteria and [Section] 27-2703[(E)](4) sets forth specific criteria. Among the specific criteria is a 'conceptual' conditional use plan that shall include any recorded easements. Section 27-2703(E)(5). The Subdivision and Land Development Ordinance (SALDO), § 22-307, requires applicants for land development plans to include 'all covenants, deed restrictions or easements relating to use of property.'

[Objector] argues that [Applicant] has failed to include the Easement in the Plans submitted to [Council]. Statement of [Errors] Complained of on Appeal ('Concise Statement'), ¶ 1(A). Counsel for [Applicant] admitted as such. [Conditional Use Hearing, Notes of Testimony (N.T.),] 10/15/13, 18:20-21. However, counsel for [Applicant] presented the Easement in detail before [Council] on the October 15, 2013. *Id.* at 18-41. As a result, [Council] had adequate notice of the Easement before voting to accept the applications. …

[Objector] also argues the Nicolet [subdivision] plan includes a note requiring all buyers and sellers of parcels grant any and all easements required for ingress, egress, utilities, and/or emergency vehicles. Concise Statement at ¶ A(2). [Applicant's Engineer] testified that such easements must be at least 24 feet wide. [Applicant's Engineer] also noted that according to the Nicolet [subdivision] plan's depiction of the easement, which includes no metes or bounds, the Easement appears to be roughly 20 feet wide. However, he stated that 24 feet is 'something that we can provide, and I don't think [Applicant] has a problem with that.' N.T. 10/15/13, 26.

4

[Applicant's] counsel has also repeatedly offered to provide sufficient space for that purpose.

[Objector] claims that [Council] misinterpreted § 27-413, which provides that 'the application shall be considered in light of the general conditional use criteria set forth in [§ 27-413(1)(D)], in addition to any more specific criteria set forth in other parts of the zoning ordinance that are relevant to the application.' Concise Statement, ¶ 1(C). [Objector] points to § 27-2703(E)(5), which sets forth specific requirements for [c]onditional [u]se applications. *Id.* [Objector] claims that it 'requires that applications for [c]onditional [u]se include existing features such as streets or roads.' *Id.* Section 27-2703(E)(5)(b)(1) requires [c]onditional [u]se applications to include an 'existing features plan' that indicates recorded easements to be submitted. [Objector] argues that [Applicant's] failure to include the Easement in the Plan violates this provision. However, [Applicant] laid out all relevant details of the Easement at the hearing, providing notice to [Council] of the Easement's existence. By presenting the Easement before [Council], [Applicant] satisfied the § 2703 easement requirement. The same rationale applies to [Objector's] claim that [Applicant's] plan did not comply with §§ 22-303 to 308 of the … SALDO. Concise Statement, ¶ 1(D).

[Objector's] theory of appeal relies on the fact that [Applicant] did not include the easement in the conditional use application as set forth in § 27-2703(E)(5)(b)(1) and § 22-307(1)(K). [Applicant's Engineer] testified at the [Council] meeting that [Applicant] 'can amend the plans to provide for an access easement,' N.T. 10/15/13, 26, and can easily remove parking spots in order to provide adequate ingress/egress. *Id.*, 29.

This Court finds that [Applicant] effectively complied with the [z]oning [o]rdinance and SALDO because it sufficiently apprised [Council] of the existence and details of the Easement. [Council] unanimously granted the applications in light of that information. Otherwise, [Applicant] demonstrated substantial compliance with the ordinances.

5

Tr. Ct., Slip Op., 12/2/15 at 3-4.  This matter is now before us for disposition.[4]

---

[4] After Objector filed its appeals to this Court, Applicant filed a motion to quash the appeals and to award costs, fees and delay damages against Objector.  In particular, Applicant seeks to quash Objector's appeals on the grounds: (1) Objector did not comply with Pa. R.A.P. 2101 and 2154 by filing a designation of the items it intended to reproduce in its reproduced record, which precluded Applicant from reviewing and, if necessary, filing objections, and Objector did not file a brief statement of issues; (2) Objector did not comply with Pa. R.A.P. 2185 and 2101 by timely filing its brief and reproduced record; and, (3) Objector violated Pa. R.A.P. 2101 and 2152(a) by including documents in its reproduced record (Reproduced Record (R.R.) at 12a-22a, 85a, 86a-89a, 90a-94a, 113a, 114a, 116a) that were not part of the record before Council, and the trial court rejected Objector's attempts to supplement the record with these documents.

In addition, Applicant seeks costs, fees and delay damages under Pa. R.A.P. 2744 on the ground Objector's appeals are frivolous in that they lack any likelihood of success on the merits (especially when the documents Objector improperly included in its reproduced record are excluded from consideration).  Alternatively, Applicant asserts, the conduct of Objector and its counsel in filing and proceeding with these appeals was dilatory, obdurate or vexatious.  Further, Applicant avers, as a result of these frivolous appeals, and Objector and its counsel's dilatory, obdurate and vexatious conduct, Applicant will continue to incur substantial losses, in addition to those losses it incurred over the three years since Objector commenced its appeals before the trial court, as a result of increases in interest rates, costs of construction, costs of materials and other damages from the delay caused by the frivolous appeals and Objector's dilatory, obdurate and vexatious conduct.

Objector filed an answer to Applicant's motion to quash the appeals and to award costs, fees and delay damages in which it denied most of the material allegations.  Thereafter, a single judge of this Court directed that Applicant's motion be listed with the merits.

Upon review, we deny Applicant's motion to quash Objector's appeals for failure to comply with the Rules of Appellate Procedure given that these violations do not preclude our ability to conduct effective appellate review.  See, e.g., Mulholland v. Workmen's Comp. Appeal Bd. (Bechtel Constr.), 669 A.2d 465 (Pa. Cmwlth. 1995) (declining to quash claimant's appeal for failure to file designation of contents of reproduced record and to include relevant docket entries in reproduced record;  violations were not of such magnitude as would preclude effective exercise of appellate review);  Thomas v. APSCUF, 485 A.2d 903 (Pa. Cmwlth. 1985) (petitioner's failure to comply with appellate rules as to filing of brief and reproduced record did not warrant dismissal of appeal where defects were not of such magnitude as would preclude effective exercise of appellate review).  To that end, this case is distinguishable from Kochan v. Department of Transportation, Bureau of Driver Licensing, 768 A.2d 1168 (Pa. Cmwlth. 2001), cited by Applicant, where, among other things, the defects in the self-represented petitioner's brief were so substantial as to preclude effective appellate review.  Further, we do not believe the irregularities in Objector's Reproduced Record are so substantial as to warrant dismissal as was the case in Roselli v. Roselli, 750 A.2d 355 (Pa. Super. 2000), also cited by Applicant.

Nevertheless, we do not consider the documents included in Objector's Reproduced Record that were not part of the record made before Council where the trial court rejected Objector's attempts to supplement the record to include these documents.  Although Objector

**(Footnote continued on next page…)**

6

**(continued…)**

claims these documents are part of the record in the related appeals docketed at Nos. 643 and 644 C.D. 2015, as discussed in our opinion in those cases, a single judge of this Court struck those documents from the reproduced record because they were not contained in the certified record. Further, Objector argues we can consider the documents because they were attached to Council's brief to the trial court and introduced at the trial court's hearing on Applicant's request for imposition of a bond against Objector; however, our review of the record created before Council, the fact-finder here, reveals these documents were not submitted as evidence. Thus, we do not consider the documents included in Objector's Reproduced Record where they were not part of the record made before the fact-finder, and where the trial court rejected Objector's attempt to supplement the record to include these documents.

As to Applicant's request for costs, fees and delay damages against Objector, Pa. R.A.P. 2744 states:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> > (1) a reasonable counsel fee and
> > (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Id. This Court describes a frivolous appeal as "one presenting no justiciable questions and so readily recognizable as devoid of merit on face of [the] record that there is little prospect that it can ever succeed," Appeal of Langmaid Lane Homeowners Ass'n, 465 A.2d 72, 75 (Pa. Cmwlth. 1983) (citation omitted), and "one in which no justiciable question has been presented and [the] appeal is readily recognizable as devoid of merit in that there is little prospect that it will ever succeed." Erie v. Int'l Ass'n of Firefighters, Local 293, 522 A.2d 132 (Pa. Cmwlth. 1987) (citation omitted). A vexatious appeal is one instituted without reasonable cause. Dep't of Transp., Bureau of Driver Licensing v. Grubb, 618 A.2d 1152 (Pa. Cmwlth. 1992). Further, obdurate is defined as unyielding or stubborn. In re Padezanin, 937 A.2d 475 (Pa. Super. 2007). And, dilatory is defined as tending to cause delay. BLACK'S LAW DICTIONARY 488 (8th ed. 2004).

Here, as set forth more fully below, although Objector's appeals lack merit, the appeals are not frivolous so as to justify the imposition of counsel fees or delay damages against Objector. This determination is bolstered by the fact that, after hearings, the trial court denied Applicant's request that Objector file a bond as a condition of pursuing its appeals on the ground the appeals were frivolous. Also, after Applicant filed a motion for reconsideration of the order
**(Footnote continued on next page…)**

## II. Issues

On appeal,[5] Objector asserts Council's grant of Applicant's conditional use application constitutes an error of law or abuse of discretion where Council's decision required an unauthorized variance and was based on findings not supported by substantial evidence. Objector also argues Council's grant of Applicant's land development plan constitutes an error of law or abuse of discretion where it required an unauthorized variance and was based on findings not supported by substantial evidence.

------

**(continued…)**

denying its bond request, the trial court again denied Applicant's request for imposition of a bond, finding Objector's appeals were not frivolous. Nor is it clear that Objector's appeals were taken solely for delay or that Objector's conduct is dilatory, obdurate or vexatious. Thus, we decline to award of counsel fees or delay damages under Pa. R.A.P. 2744.

Of further note regarding Applicant's request for delay damages: "Damages for delay are only those damages directly attributable to the cost of defending against the frivolous appeal, not cost[s] that may be incurred as a result of a party not continuing with an undertaking because of the uncertainty that an appeal, no matter how frivolous, may engender." G. Ronald Darlington et al., PENNSYLVANIA APPELLATE PRACTICE, §2744:4 ("Damages for delay") (2015-2016 ed.) (quoting Sampaolo v. Cheltenham Twp. Zoning Hearing Bd., 596 A.2d 287, 292 (Pa. Cmwlth. 1991)) (emphasis added). Thus, the types of damages Applicant seeks do not appear to fall within the delay damages contemplated by Pa. R.A.P. 2744, even if we agreed with Applicant that Objector's appeals were frivolous or taken solely for delay or that Objector's conduct was dilatory, obdurate or vexatious. Id.

[5] Generally, where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. Kassouf v. Twp. of Scott, 883 A.2d 463 (Pa. 2005).

In addition, where, as here, the trial court did not take additional evidence, our review is limited to determining whether Council abused its discretion or committed an error of law in granting the conditional use application. Aldridge v. Jackson Twp., 983 A.2d 247 (Pa. Cmwlth. 2009).

# III. Discussion
## A. Conditional Use
### 1. Contentions

Objector first maintains Council's approval of Applicant's conditional use application was predicated on Council's improper grant of a variance from the zoning ordinance. Objector contends Council's approvals were improper based on the fact that Applicant specifically acknowledged a failure to include the roadway easement of the Nicolet Subdivision on its final land development plan, which it used as part of its conditional use application. See Reproduced Record (R.R.) at 58a. To that end, Objector asserts the zoning ordinance requires inclusion of roadways and easements for conditional use applications. Section 27-2703(E)(5)(b). Thus, Objector argues, Council's approval of Applicant's conditional use application without requiring Applicant to comply with the zoning ordinance resulted in Council granting a variance, which is within the exclusive jurisdiction of the zoning hearing board.

Objector points out that the applicable conditional use standards for TODs require an applicant to include a conditional use plan, which contains, among other things, existing features, including tract size, out bounds of the tract, topography, wetlands, woodlands, floodplains, recorded easements and rights of way and any other significant physical or manmade feature existing on the tract. Section 27-2703(E)(5)(b)(1) of the zoning ordinance. Objector asserts Applicant's plan does not satisfy this requirement and, therefore, it was improperly approved.

Objector maintains, although Council has authority to amend the zoning ordinance, it is not authorized to disregard the zoning ordinance's provisions absent the proper enactment of an amendment. Because the above-referenced requirements for approval of Applicant's conditional use application were neither amended nor complied with, Objector asserts, Councils' approval of the conditional use application was improper. Thus, Objector contends Council's decision should be reversed and remanded with the direction that Council require Applicant to include the recorded easements, roadways, streets and rights of way on its plan submitted as part of its conditional use application in order to comply with the zoning ordinance.

Objector further asserts, although it anticipates Applicant will argue that it was not required to include the roadway easement in its conditional use application, Council's Solicitor acknowledged it was a requirement under the zoning ordinance. R.R. at 82a. Notwithstanding this acknowledgement, Council's Solicitor attempted to argue that the zoning ordinance permits a conditional use applicant to show it has the ability to satisfy the zoning ordinance requirements as part of the final land development process. Id. However, Objector argues, in light of the fact that Applicant was also submitting as part of its conditional use application its final land development plans that omitted the required roadway easement, that provision clearly could not be satisfied.

Alternatively, Objector points out, Council's Solicitor asserted, because the roadway easement was discussed at the conditional use hearing, Council was aware of it. And, because he considered the easement a private

10

easement, it was not necessary to include it because the protection of a private easement is not a zoning concern. R.R. at 82a-83a. However, Objector asserts, Council's Solicitor cited no legal authority or zoning ordinance provision in support of his position that an applicant can disregard a provision of the zoning ordinance, which states that it is mandatory.

In addition, Objector argues, although the Borough takes the position that the easement is simply a private matter in which it has no interest, this ignores the fact that pursuant to the resolution approving the Nicolet subdivision plan, the subdivision agreement, the Declaration and the recorded subdivision plan, the Borough retained access and control to enforce the provisions of the agreements. R.R. at 85a-89a, 95a-113a.

In short, Objector contends, because there is no authorization for Applicant's failure to comply with the zoning ordinance, Council's approval was not supported by substantial evidence, and it constitutes an error of law and an abuse of discretion.

Applicant responds that there is no debate that the Ambler Crossings Development requires conditional use approval pursuant to Section 27-2703(E) of the zoning ordinance. Further, the law (as well as the zoning ordinance itself) is clear that an applicant seeking conditional use approval must prove compliance with both the use-specific and general conditional use standards and criteria explicitly set forth in the applicable zoning ordinance. See, e.g., In re Thompson, 896 A.2d 659 (Pa. Cmwlth. 2006).

11

Here, Applicant argues Section 27-413(1)(D) of the zoning ordinance, unmistakably titled "Criteria," sets forth the general conditional use criteria that must be satisfied by all proposed conditional uses in the Borough. Additionally, Section 27-2703(E)(4) sets forth all of the TOD-specific conditional use standards that must also be satisfied by all proposed TODs in the Borough. Applicant asserts it is beyond dispute that Section 27-2703(E)(4) of the zoning ordinance sets forth the TOD-specific conditional use standards, as this section is unambiguously titled "Conditional Use Standards." Conversely, Section 27-2703(E)(5), relied on by Objector, is entitled "Application for Approval," and sets forth the physical application packet contents for a TOD conditional use application, *i.e.*, conceptual architectural renderings, traffic impact study, conceptual plan showing, among other things, existing features.

Applicant points out that Objector argues Section 27-2703(E)(5)(b)(1), requiring conditional use applications to be accompanied by a conceptual plan depicting, among other things, existing features such as deed restrictions, constitutes a TOD-specific conditional use standards and criteria. Objector further asserts, because Applicant's conceptual plan did not depict the alleged easement, it did not comply with Section 27-2703(E)(5)(b)(1), which, in turn, constitutes a failure to comply with a TOD-specific conditional use standards and criteria. Applicant points out that Objector further asserts the conditional use approval, in light of this alleged deficiency, resulted from a variance from the requirements of Section 27-2703(E)(5)(b)(1), and the grant of the variance was an abuse of discretion or an error of law.

Applicant contends the flaws in this confusing argument are facially apparent. First and foremost, Section 27-2703(E)(5)(b)(1) does not establish any TOD-specific conditional use *standards or criteria*. Rather, all TOD-specific conditional use standards and criteria are unmistakably set forth in Section 27-2703(E)(4), aptly titled "Conditional Use Standards." Therefore, Applicant maintains, its alleged failure to comply with Section 27-2703(E)(5)(b)(1), even if assumed true, does not constitute a failure to comply with a TOD-specific (or general) conditional use standards or criteria set forth in the zoning ordinance. In fact, Applicant argues, a review of the hearing transcript reveals Applicant complied with all general conditional use standards and criteria as well as all TOD-specific conditional use standards and criteria in Sections 27-413(1)(D) and 27-2703(E)(4) of the zoning ordinance, respectively, *a fact which Objector has not challenged at any point in time*. R.R. at 37a. As a result, Applicant maintains, Objector failed to even allege Applicant did not comply with any actual TOD-specific or general conditional use standards and criteria explicitly set forth in the zoning ordinance, and, therefore, Objector did not establish or even allege that Council abused its discretion or erred as a matter of law in approving Applicant's conditional use application.

Further, Applicant argues, it is uncertain why or how Objector believes the conditional use approval, in light of Applicant's alleged noncompliance with Section 27-2703(E)(5)(b)(1), constitutes an impermissible grant of a variance, as no supporting citation or justification was offered for this proposition in Objector's brief. To the extent Objector is attempting to assert

13

Council should have directed Applicant to appear before the Ambler Borough Zoning Hearing Board to request a variance from Section 27-2703(E)(5)(b)(1), Applicant contends, such an argument is baseless, as variances involve the use of land (*i.e.,* there are "use variances" and "dimensional variances"), not the procedure by which a conditional use application is submitted under a zoning ordinance (*i.e.,* there is no "conditional use application requirement variance").

Applicant maintains it cannot be overstated that Objector has at no point in time asserted that Applicant failed to satisfy each of the TOD-specific and general conditional use standards and criteria. Further, Objector did not put forth any alternative argument in support of the proposition that the conditional use approval was an abuse of discretion or an error of law. As such, Applicant argues, Objector's appeal of the conditional use approval must be denied.

For its part, Council contends it acted properly in granting conditional use approval. Council argues the ordinance language requiring that easements be shown can fairly be read as referring to *public* easements in light of the fact that *private* easements are not a matter for Council's consideration. Council asserts Objector's argument is hyper-technical.

Council further maintains the failure of the plan to show the easement did not matter because the easement was fully discussed at the hearing on the plan. After hearing everything Objector had to say about the easement, Council simply concluded it did not matter because the easement was private and for good measure the parties represented they would resolve the easement issue separately. On the

14

night of the hearing, Council argues, Objector's own pending development plan *obstructed* the very same easement.

Council points out Objector attempts to style the easement as public because the Borough was a party to the subdivision agreement that set forth the easement. Council asserts this ignores the fact that the Borough is not a signatory to the easement, which by its terms confirms the Borough's complete lack of involvement in maintaining or having anything to do with the easement. Even if the easement were public, Council argues, it acted within its discretion in not rejecting the plan for failing to include it.

Council contends it reasonably appears from a reading of the hearing transcript as a whole that Objector, on the night of the hearing, was operating under the incorrect assumption that Council's approval of a plan that did not show the easement amounted to some manner of legal determination that the easement did not exist or was not valid. However, Council maintains, it has no legal authority to make such a determination, and it is clear from the hearing transcript that Council was simply allowing the parties to resolve any differences over their rights to the easement.

In its reply brief, Objector points out that Applicant asserts Council's waiver of the requirements in Applicant's application was not a variance because it did not affect the use of the land. However, Objector contends, this ignores the effect of the unauthorized variance Applicant obtained, which enabled it to use land for parking that it would otherwise not be entitled to in a location where the

easement was required to be placed. Additionally, Council effectively authorized Applicant to close the easement without requiring it to follow the proper procedure to do so.

Objector also asserts it clearly indicated at the conditional use hearing that if everyone were in agreement to move the easement to the location Applicant wanted with it widened to the required 24 feet and containing curbs and sidewalks, Objector would have no objection to proceeding in that manner. R.R. at 59a-60a, 62a. Despite Applicant's representations at the hearing that it could and would provide access if required by Council, Objector argues, Council granted Applicant's application without such a requirement in contravention of the zoning ordinance.

## 2. Analysis

A conditional use is nothing more than a special exception that falls within the jurisdiction of the municipal governing body rather than the zoning hearing board. Thompson. As in the case of special exceptions, the uses that may be established or maintained as conditional uses are prescribed by the zoning ordinance and the standards to be applied to the grant or denial of those uses are set forth in the zoning ordinance. Id. A special exception (or conditional use) is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance for the special exception (or conditional use) are met by the applicant. Id.

16

Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof is the same for both. Id. "In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance." In re Richboro CD Partners, L.P., 89 A.3d 742, 745 (Pa. Cmwlth.), appeal denied, 97 A.3d 746 (Pa. 2014). If the applicant is able to satisfy this burden, "the application must be granted, unless the protestors to such an application have presented sufficient evidence that such a use would pose a substantial threat to the community." Visionquest Nat'l, Ltd. v. Bd. of Supervisors of Honey Brook Twp., Chester Cnty., 569 A.2d 915, 917 (Pa. 1990).

In addition, a local governing body is entitled to considerable deference in interpreting its zoning ordinance. Aldridge v. Jackson Twp., 983 A.2d 247 (Pa. Cmwlth. 2009).

Section 27-2703(E) of the zoning ordinance permits a TOD by conditional use in the RO district. Section 27-413(1)(D) of the zoning ordinance sets forth four general criteria that apply to all conditional use requests in the Borough. Additionally, Section 27-2703(E)(4) contains numerous detailed "Conditional Use Standards" specific to TODs. Id. Further, Section 2703(E)(5) sets forth certain requirements for submission of conditional use applications, including submission of a conceptual conditional use plan.

17

Here, Objector does not contest Applicant's compliance with the general or specific conditional use criteria set forth in Sections 27-413(1)(D) or 27-2703(E)(4). Rather, Objector's argument that Council improperly granted Applicant's conditional use application centers on Applicant's alleged failure to comply with Section 27-2703(E)(5)(b)(1). As Applicant points out, Section 27-2703(E)(5), does not contain any general or specific criteria required to obtain a TOD conditional use. Thus, the requirements set forth in that section relate to the required components of the actual *application* a conditional use applicant must submit, and not the general or specific requirements an applicant's conditional use proposal must satisfy. Nevertheless, as Objector points out, Section 27-2703(E)(5)(b)(1) requires a conditional use applicant to submit, as part of its application, a "conceptual" conditional use plan, including, among other things, an existing features plan that indicates recorded easements, and it is stated in mandatory terms.

Section 27-2703(E)(5) states, in relevant part:

(5) Application for Approval.

(a) TOD development shall be available as a conditional use in the [RO] District only, and application shall be made for such approval in accordance with the provisions of this subsection.

(b) Such applications shall be accompanied by a conditional use plan showing the relationship among the various components of the development. The conditional use shall be prepared at a scale appropriate to the size of the property and in sufficient detail to demonstrate that the plan complies with the requirements of this chapter. The conditional use plan shall be conceptual in nature and shall not be required to meet the provisions of a

18

preliminary subdivision or land development plan. The applicant shall have the option, however, of submitting preliminary subdivision or land development plans concurrent with the conditional use application. The conditional use plan shall include the following elements:

1) An existing features plan shall be submitted which shall indicate the tract size, out bounds of the tract, topography, wetlands, woodlands, floodplains, recorded easements and rights-of-way and any other significant physical or manmade feature existing on the tract.

Sections 27-2703(5)(a), (b)(1) of the zoning ordinance (emphasis added).

Here, our review of the transcript of the conditional use hearing reveals Applicant satisfied this requirement. Specifically, Applicant submitted as an exhibit the Declaration, which indicates the existence of the easement and states the easement runs through the parcels created by the Nicolet subdivision plan. R.R. at 95a-112a. Included with the Declaration as "Schedule B," is a copy of the Nicolet subdivision plan, which depicts the hand drawn easement. R.R. at 112a. Further, Applicant submitted as an exhibit a document created by its Engineer that showed, to the extent possible, the superimposition of the easement on a plan that showed both Objector's preliminarily approved plan and Applicant's proposed development. R.R. at 115a. Moreover, with regard to his ability to precisely plot the easement on Applicant's plans, Applicant's Engineer explained:

That easement, though, if I could add to it, that easement doesn't have [metes] and bounds associated with it. So … the best we have is an old map that's illegible. So we scaled that onto the plan the best it would line up. There's no [metes] and bounds descriptions to properly locate that on the property. …

Like I said, that easement sort of -- it zigzags, changes width. I don't know the exact if it's twenty feet, fine. I think you will need at least twenty-four feet to comply with the

19

ordinance. That's something that we can provide, and I don't think the applicant has a problem with that.

> There's no way to properly map that on our plan. We can't really do that on something that was signed and, sealed as an engineer, because there's no [metes] and bounds associated with that. …

R.R. at 61a-62a. Further, contrary to Objector's assertions that Applicant's Engineer conceded that the easement *could* be accurately plotted on Applicant's plans, the following exchange occurred between Objector's counsel and Applicant's Engineer (with emphasis added):

> [Objector's counsel]:       But if you have a subdivision that has all of the diagrams and all of the drawings, are you saying you're not able to determine what the [metes] and bounds would be?
>
> [Applicant's Engineer]:       If it's not dimensioned to some sort of accuracy, it's not a plan to scale. If there's an exact plan to scale with reference to benchmarks, we can probably do it. But I don't think that's the case. …

R.R. at 64a. Applicant's Engineer then stated: "I think the intention was that [the easement] generally followed an old edge of pavement which no longer exists on the site. So it's impossible to plot it." R.R. at 64a-65a (emphasis added).

In addition, we discern no merit in Objector's unsupported and strained argument that Council improperly granted Applicant a variance from this zoning ordinance requirement. There is simply no indication here that any variance was granted.

20

Finally, as discussed more fully below, our review of the hearing transcript reveals Objector's primary concern relates to its rights to use the easement. It is well settled that issues concerning property rights in instruments of title must be resolved in the courts rather than in zoning or land development proceedings. See Michener Appeal, 115 A.2d 367 (Pa. 1955) (any consideration of building restrictions placed on a property by private parties has no place in proceedings under the zoning laws for a building permit or variance); Anderson v. Bd. of Supervisors of Price Twp., 437 A.2d 1308 (Pa. Cmwlth. 1981) (subdivision plan must be approved if it complies with the applicable regulations; a subdivision plan that conforms to all the technical requirements cannot be denied based on deed restrictions). Thus, disputes over easement rights are not the proper subject of a zoning or land development proceeding, but rather must be decided by the courts. Council, its Solicitor and the parties acknowledged this at the hearing. R.R. at 70a-72a, 74a-75a. Also, as explained below, Objector is pursuing a separate action regarding its easement rights in the trial court.

## B. Land Development Plan
### 1. Contentions

Objector also contends Council's approval of Applicant's subdivision and land development application constituted an error of law and an abuse of discretion because it required an unauthorized variance and was unsupported by the evidence. Objector incorporates its arguments above concerning Council's improper approval of Applicant's conditional use application with regard to what Objector argues was Council's improper approval of Applicant's preliminary and final land development plan. Objector notes that, although different principles apply to approval of a conditional use and a land development plan, the law is the

21

same as to Council's lack of authority to provide a variance from its zoning ordinance when that authority lies with the zoning hearing board.

Objector asserts Applicant's omission of the easement on its preliminary and final land development plan violates the SALDO. Additionally, Objector contends the SALDO provisions requiring inclusion of the roadway easement are waivable but any such waiver must be in writing. Objector maintains the hearing transcript here reveals no such waiver was requested or granted. For these reasons, Objector argues Council's approval of Applicant's preliminary and final land development plan should be overturned and the application remanded to Council with instructions to require Applicant to either comply with the SALDO or seek relief from its provisions to the extent it cannot comply.

Applicant responds that Objector appears to assert that because Applicant's preliminary and final land development plans did not depict the alleged easement, the plans failed to comply with Sections 22-305(4)(B)(13) and 22-306(A)(2) of the SALDO. Applicant points out Objector then argues Council's approval of Applicant's land development application, in light of this alleged noncompliance, constituted the improper grant of a variance from Sections 22-305(4)(B)(13) and 22-306(A)(2) of the SALDO, and therefore was an abuse of discretion or error of law.

First and foremost, Applicant contends, this argument is easily discounted with even a cursory understanding of the Pennsylvania Municipalities

22

Planning Code[6] (MPC), as one does not receive relief from provisions of a SALDO by way of a variance. Rather, a variance grants relief solely from the provisions of a zoning ordinance. It is therefore clear that, to the extent Council afforded Applicant any relief (which, as discussed below, it did not), such relief would not constitute a variance, and Objector's allegations are frivolous as they are easily discounted with even a cursory understanding of the MPC.

Moreover, Applicant maintains, it is clear that Council did not afford Applicant any relief from compliance with the SALDO provisions at issue. Section 22-305(4)(B)(13) of the SALDO requires a preliminary land development plans to depict "[a]reas subject to deed restrictions or easements, including land to be dedicated or reserved for future road widening or other public or common use." Id. (emphasis added). Applicant notes this requirement is also incorporated in Section 22-306(A)(2) as a requirement for final land development plans. Applicant argues these requirements only necessitate an applicant to include deed restrictions and easements of a "public" nature on preliminary and final plans. Applicant asserts Council properly determined during the hearing and subsequent regular meeting that the alleged easement was a private easement, and, therefore, its inclusion on Applicant's preliminary and final land development plans was not required. R.R. at 74a. As such, Applicant contends, no relief from Sections 22-305(4)(B)(13) or 22-306(A)(2) of the SALDO was required, or granted; rather, these sections simply do not apply here.

_____

[6] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101–11202.

23

Applicant further asserts, in apparent recognition of the fact that a claimed violation of Sections 22-305(4)(B)(13) and 22-306(A)(2) required the alleged easement to be deemed "public" in nature, Objector repeatedly attempted to supplement the record before the trial court (but not before Council) with documents purporting to establish the alleged easement is "public."

Unable to properly supplement the record with such documents before the trial court, Applicant maintains, Objector apparently decided to nevertheless supplement its Reproduced Record with these documents, which are not of record, in hopes of creating a colorable claim before this Court as to the alleged "public" nature of the easement. However, Applicant asserts, one need not look outside the *proper* record to determine the alleged easement is private, as no public party or entity was a party to the Declaration. R.R. at 95a. Thus, Applicant argues, despite Objector's attempts to subvert Pennsylvania Rule of Appellate Procedure 2152 by supplementing its Reproduced Record with documents not of record, it remains clear the easement is private, and therefore is not required to be included on Applicant's preliminary and final plans submitted as a part of Applicant's land development application. Applicant notes Council echoes this conclusion in its brief to this Court.

Even assuming, for the sake of argument, the easement is "public," and therefore arguably required to be included on Applicant's preliminary and final land development plans, Applicant maintains, the alleged easement's absence from the plans is not fatal to Applicant's land development application, as the easement cannot be accurately plotted on any plans.

Applicant asserts its Engineer offered uncontroverted expert testimony during the hearing, which immediately preceded and provided substantial information to Council for its vote to approve Applicant's land development application at its regularly scheduled meeting. Applicant's Engineer specifically testified that, based on the absence of any metes and bounds description for the alleged easement in the Declaration, it is impossible to accurately plot the easement on plans. R.R. at 62a, 64a. Applicant's Engineer testified further that given the complete lack of specificity as to the location (or even width) of the easement, no professional engineer would be able to place his professional seal on plans purporting to plot the alleged easement. Id. Applicant argues Objector offered no testimony or evidence to contradict this fact. Therefore, Applicant contends, even if the easement is deemed "public," its absence from Applicant's preliminary and final land development plans is nevertheless excused, as it would truly be an absurd result for Council to deny Applicant's land development application based on the fact that Applicant's preliminary and final plans did not depict an easement that is impossible to depict.

In addition, Applicant argues Objector did not assert Applicant's preliminary and final land development plans failed to comply with any other SALDO provision, and Objector does not offer any alternate grounds on which the land development approval was claimed to be an abuse of discretion or an error of law. As such, Applicant maintains, Objector's claim must fail.

In its reply brief, Objector asserts, although Applicant maintains its Engineer offered uncontroverted testimony that the easement could not be defined

on the plans, Applicant's Engineer later acknowledged it could be done.  R.R. at 63a-64a.

Objector also asserts Applicant joins in Council's argument that even if there was error in the approvals provided to Applicant none of the errors would matter because the easement is a private easement.  In order to maintain this position, Objector argues, Council went to great lengths to distance itself from the rights it retained as a result of its approval of the Nicolet subdivision.  Those rights included the right to retain access for emergency use, the right to require all buyers and sellers of parcels in the Nicolet subdivision to grant any and all easements required for utilities, ingress, egress or emergency vehicles, and the requirement that lot owners form an organization to maintain the easement as well as repair or replace it to the Borough's required specifications.  R.R. at 116a.  Objector maintains Council offers no explanation as to why it is abdicating or delegating its right to enforce the covenants contained in its subdivision agreement for the Nicolet subdivision.

### 2. Analysis

Where a subdivision or land development plan complies with all objective provisions of the applicable SALDO as well as all other applicable regulations, the plan must be approved.  Berner v. Montour Twp., 120 A.3d 433 (Pa. Cmwlth. 2015).  However, if legitimate, a single reason may support denial of a land development plan.  Kassouf v. Twp. of Scott, 883 A.2d 463 (Pa. 2005).

Here, Objector asserts Applicant's preliminary and final land development plans did not comply with Sections 22-305(4)(B)(13) and 22-306(A)(2) of the SALDO.  Section 22-305(4)(B)(13) requires that a preliminary plan show: "Areas subject to deed restrictions or <u>easements</u>, including land to be dedicated or reserved for future road widening <u>or other public or common use</u>." <u>Id.</u> (emphasis added). Section 22-306(A)(2) incorporates this requirement for a final plan.  Further, Section 22-202 defines an "Easement" as "a right-of-way or other right granted by a property owner for the use of a designated part of his property <u>for certain public or quasi-public purposes</u>." <u>Id.</u> (emphasis added).

Based on our review of the evidence properly of record here, there is no indication the easement at issue is public or "quasi-public."  To that end, our review of the Declaration reveals that no public entity was a party to it, and the Declaration refers to the easement as a series of "<u>private</u> driveways[.]"  R.R. at 97a (emphasis added).[7]  In turn, the Declaration defines "private driveways" as

---

[7] The Declaration also states:

> 2.01    Every Owner shall have a right and easement of enjoyment in and to the private driveways which shall be appurtenant to and shall pass with the title to every lot, subject to the following provisions:
>
> * * * *
>
> b.  The right of the Association to dedicate or transfer any part of the private driveways to any public agency, municipality, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members of the Association. Nevertheless, no such dedication or transfer shall be effective unless an instrument signed by three-fourth (3/4) of all of the members agreeing to such dedication or transfer has been recorded.

**(Footnote continued on next page…)**

27

the real property owned by the [Creekside Building Association (Association)] for the common use and enjoyment of the [o]wners [of the parcels created by the Nicolet subdivision]. The private driveways to be owned by the Association at the time of the conveyance of lots from [Nicolet] shall consist of the existing private driveways as set forth on the plan of subdivision attached hereto as Schedule 'B.' The existing private driveways are depicted on the plan of subdivision as described above which shall forthwith be recorded in the Office for Recording of Deeds in and for Montgomery County at Norristown, Pennsylvania.

R.R. at 96a. Thus, there is no indication in the evidence properly of record that the easement at issue is "public" or "quasi-public." Objector's Reproduced Record includes other documents that were not part of the record before Council in an effort to show the easement is, in fact, public. Although Objector references these documents in its arguments to this Court, because these documents were not submitted as evidence before Council and because the trial court declined Objector's request to supplement the record, we cannot consider them. See Fotta v. Workmen's Comp. Appeal Bd. (U.S. Steel/USX Corp. Maple Creek Mine), 626 A.2d 1144, 1147 n.2 (Pa. 1993) (review is limited to matters appearing in the record); B.K. v. Dep't of Public Welfare, 36 A.3d 649 (Pa. Cmwlth. 2012) (same).

In any event, even if the easement at issue was deemed "public" or "quasi-public," as explained above, and contrary to Objector's current assertions, Council heard *uncontroverted* testimony from Applicant's Engineer that, based on the absence of any metes and bounds, it was not possible to accurately plot the

---

**(continued…)**

R.R. at 97a. No evidence was presented before Council that this provision was ever invoked here.

easement on Applicant's plans. Applicant's Engineer further explained, in light of the lack of specificity as to the location or width of the easement, a professional engineer could not place his professional seal on a plan that purported to plot the easement. R.R. at 61a, 62a.

Moreover, to the extent Objector's assertions relate to its concerns over the protection of its easement rights, "the protection of a private easement is a title concern, not a zoning [or land development] concern." McClay v. Zoning Hearing Bd. of U. Chichester (Pa. Cmwlth., No. 1280 C.D. 2007, filed February 25, 2010), Slip Op. at 6, 2010 WL 9512170 at *3 (unreported).[8]

Indeed, as we very recently explained at length in BR Associates v. Board of Commissioners of Township of Upper St. Clair ___ A.3d ___ (Pa. Cmwlth., No. 775 C.D. 2015, filed May 5, 2016), issues concerning property rights in instruments of title must be resolved in the courts. Id. (citing Michener Appeal; Anderson). There, we extensively reviewed the case law in this area. BR Assocs., ___ A.3d at ___, Slip Op. at 25-28, 2016 WL 2586168 at *12-*13.

Here, Applicant points out that Objector heeded the directive of these cases and filed a separate action in the trial court requesting a declaratory judgment regarding the easement, which is docketed at No. 2014-04500. Br. of Maple Avenue Park Partners, LLP, at 9 n.3.

---

[8] Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414, an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

Further, because Objector does not clearly explain how Applicant's plan fails to comply with any other SALDO requirement, we discern no error of law or abuse of discretion in Council's approval of Applicant's preliminary and final land development plans.

In addition, we discern no merit in Objector's strained argument that Council improperly granted Applicant a variance or waiver from any SALDO requirement. There is simply no indication here that any such variance or waiver was granted.

### IV. Conclusion

For all the foregoing reasons, we affirm the trial court's orders that upheld Council's decisions approving Applicant's conditional use application and preliminary and final land development plans.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Appeal of AMA/American Marketing Association, Inc. from the Decision of the Borough Council of Ambler Borough, dated October 15, 2013 approving the Land Development Plan known as Ambler Crossings for property of Maple Avenue Park Partners, LLP Block-Unit 01028-001 Parcel Number 01-00-02944-00-7 | : : : : : : : : : : : | No. 2023 C.D. 2015 |
| Appeal of: AMA/American Marketing Association, Inc. | : : | |
| In Re: Appeal of AMA/American Marketing Association, Inc. from the Decision of the Borough Council of Ambler Borough, dated October 15, 2013 approving the Application for Conditional Use for Land Development known as Ambler Crossings for property of Maple Avenue Park Partners, LLP Block-Unit 01028-001 Parcel Number 01-00-02944-00-7 | : : : : : : : : : : : | No. 2024 C.D. 2015 |
| Appeal of: AMA/American Marketing Association, Inc. | : : | |

## **O R D E R**

**AND NOW**, this 14th day of June, 2016, the orders of the Court of Common Pleas of Montgomery County are **AFFIRMED**.

The Motion of Maple Avenue Park Partners, LLP to Quash or Dismiss the Appeals of AMA/American Marketing Association, Inc., and Award Costs, Fees and Damages for Delay to Maple Avenue Park Partners, LLP is **DENIED**.


_____
ROBERT SIMPSON, Judge