# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CGR Real Estate, LLC, CGR RE :
Franklin Park, LP, and CGR Holdings, LLC, :
 :
  Appellants :
 :
  v. : No. 780 C.D. 2016
 :
Borough Council of The Borough of :
Franklin Park :
 :
  v. :
 :
Gregory and Kathleen Woodworth, :
Helene Donch and Bernard M. Avon, Jr. :
 :
CGR Holdings, LLC :
 :
  v. : No. 971 C.D. 2016
 :
Borough Council of the Borough of :
Franklin Park :
 :
  v. :
 :
Gregory and Kathleen Woodworth, :
Helene Donch and Bernard M. Avon, Jr. :
 :
Appeal of: CGR Real Estate, :
LLC and CGR Holdings, LLC :
 :
CGR Real Esstate, LLC :
 :
  v. : No. 972 C.D. 2016
 : ARGUED:  November 14, 2016

Borough Council of the Borough of : 
Franklin Park :
:
v. :
:
Gregory and Kathleen Woodworth, :
Helene Donch and Bernard M. Avon Jr. :
:
Appeal of: CGR Real Estate, :
LLC and CGR Holdings, LLC :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED: January 26, 2017**


In these consolidated land use appeals, CGR Real Estate, LLC, CGR RE Franklin Park, LP, and CGR Holdings, LLC (collectively, Appellants) appeal from an order of the Court of Common Pleas of Allegheny County affirming two decisions of the Borough Council of the Borough of Franklin Park (Council) to deny their land development applications. Council and the neighboring residents have filed a joint brief. We affirm in part, and reverse in part.

Appellants seek to construct three apartment buildings in the Borough of Franklin Park, with four stories and a total of 126 units, on approximately 5.21 acres of vacant land (the Apartment Property). Located in a Medium-Intensity Mixed-Use Residential, Commercial and Light Industrial District (M-2 Zoning District), the Apartment Property is bounded by an office development to the

2

north, Interstate 79 to the east, and residential lots to the south and west. Although a multi-family apartment building is a permitted use, by right, in the M-2 Zoning District, the dispute in this matter arose from Appellants' efforts to provide access to the Apartment Property from a public street located to the west of the property, Aldon Drive. In this regard, their two submissions to Council (the First Plan and the Second Plan), delineate their respective proposals to provide access from Aldon Drive to the Apartment Property and Council's responses thereto. On review, we conclude that Council was correct in denying the First Plan, but erred in denying the Second Plan.

## *The First Plan*

In October 2014, Appellants submitted the First Plan consisting of a preliminary and final land development application and a minor subdivision application. Pursuant to the First Plan, Lorrick Lane, part of which is perpendicular to Aldon Drive, was to provide access to the Apartment Property over contiguous property in the R-2 zoning district (the Driveway Property). Owned by Appellant CGR Holdings, LLC, the Driveway Property contains a vacant, single-family residence, has frontage on Aldon Drive, and has Lorrick Lane running along its southerly property line. In their minor subdivision application, Appellants sought to subdivide the Driveway Property into two parcels so that the portion abutting the Apartment Property (subdivided Lot 17B) could be used to slightly widen Lorrick Lane, accommodate necessary grading, and install a sidewalk. The balance of the Driveway Property (subdivided Lot 17A) would be used for the existing residence. In February 2015, Council denied the First Plan, determining that Appellants did not meet three sections of the Franklin Park Borough Subdivision and Land Development Ordinance (SALDO).

3

The first SALDO provision, Section 184-905.A(7), prohibits dead-end streets unless designed as a cul-de-sac or as a stub street with a temporary turnaround for access exclusively to neighboring tracts, with no more than two lots taking access thereto. In determining that Appellants did not meet this section, Council characterized Lorrick Lane as a dead-end street that already serves five lots and is neither a cul-de-sac nor a stub street with a temporary turnaround.

The second SALDO provision, Section 184-905.C(1).b.4, provides that properties depending on a private street for access have a guaranteed, irrevocable right to access under a right-of-way access easement or other legal covenant, which shall be clearly noted on the subdivision and/or land development plans creating a private street, included in all deeds for all properties with access rights, and recorded in the Office of Real Estate of Allegheny County. Council concluded that Appellants did not meet this section because Lorrick Lane was never dedicated for public use and they failed to note on their plans that there was a guarantee of access for all parcels utilizing it. In so concluding, Council rejected Appellants' proffered documentation in their revised First Plan showing that the Apartment Property and subdivided Lot 17B from the Driveway Property had a right to use Lorrick Lane. Submitted in response to Council's request that they provide proof that Lorrick Lane could serve as access to the Apartment Property, Appellants' submission included a copy of the Nicholson Heights Plan of Lots. Pursuant to that July 1957 plan, the Driveway Property is identified as Lot 17 and there is an unnamed street in the same location as Lorrick Lane.[1] Allegheny County Plan Book, Volume 63 at 15; Reproduced Record (R.R.) 152-53a.

---

[1] In asserting that they had access to the Apartment Property via Lorrick Lane, Appellants asserted as follows:

**(Footnote continued on next page…)**

4

The third SALDO provision, Section 184-910.B.(1).b, provides that for slopes of 15% to 25%, no more than 40% of such areas shall be developed and/or regraded or stripped of vegetation unless a soils engineer certifies the stability of the soils and slopes and that, when an engineer has so certified, the percentage of disturbance may be increased to 55%. Pursuant to this section, the Borough rejected Appellants' request for modification of the percentage of disturbance requirement from 55% to 70%, determining that they failed to satisfy the relevant criteria.

*The Second Plan*

In April 2015, Appellants submitted the Second Plan consisting of a preliminary and final land development application and a minor subdivision application. This time, Appellants proposed single-driveway access to the

---

**(continued…)**

> [W]hat is labeled "Lorrick Lane" on various plans and tax maps was depicted as an unnamed street on the Nicholson Heights Plan . . . . Surveys of the area and the tax maps confirm that while Lorrick Lane has never been opened as a full public street, a driveway exists within the area of Lorrick Lane that provides direct access between Aldon Drive, the [Apartment] Property and other lands to the south of the Property. This driveway has existed for well more than twenty one years, and I believe, dates back at least to the recording of the Nicholson Heights Plan. These facts would support a conclusion that the unnamed street shown on the Nicholson Heights Plan, now labeled Lorrick Lane, was intended to serve as an access way to the Property. In addition, given the passage of time, prescriptive easement rights would likely now accrue to the benefit of the Property.

February 17, 2015, Opinion Letter from Counsel for Appellants at 1; R.R. at 243a. There is also a recorded right-of-way agreement, which references Lots 17 and 18 of the Nicholson Heights Plan. September 29, 1986, Right-of-Way Agreement at 1-2; R.R. at 498-99a. Lot 17 is the Driveway Property and Lot 18 is to its south. Both lots border Lorrick Lane and have frontage on Aldon Drive. February 5, 1987, Hoolahan Plan of Subdivision; R.R. at 513a.

5

Apartment Property by way of a new driveway to be constructed across the Driveway Property. The new driveway would traverse the area where the vacant residence now sits, roughly north of and parallel to Lorrick Lane. In denying the Second Plan, Council determined that Appellants failed to satisfy three different sections of the Borough's SALDO.

The first SALDO provision, Section 184-902, provides, in pertinent part, that where zoning requirements and subdivision requirements conflict, the zoning requirements shall govern. In addressing this section, Council determined that the proposal to use a driveway over property located in the R-2 zoning district to access apartments in an M-2 Zoning District would violate Section 212-401 of the Zoning Ordinance of the Borough of Franklin Park (Zoning Ordinance), providing that "no building, structure or land shall be used or occupied except for purposes permitted in §212-404 and for the zoning districts so indicated." In other words, given the fact that apartments are not a permitted use in the R-2 district, the Borough concluded that they cannot be accessed via a driveway over property located in the R-2 zoning district. In support, Council cited *Mine Safety Appliances Co. v. Marshall Township Board of Supervisors*, 551 A.2d 634, 635 (Pa. Cmwlth. 1988), holding that an access driveway could not traverse a residentially-zoned lot to access an industrial use, and *Atria, Inc. v. Board of Adjustment of Mount Lebanon Township*, 264 A.2d 609, 611 (Pa. 1970), holding that an access driveway could not traverse a residentially-zoned lot to access a commercially-zoned lot with a combination beer parlor, grocery store, and restaurant.

The second SALDO provision, Section 184-905(A)(13)(c), provides that plans with more than forty dwelling units shall have a minimum of two access

6

points to a public street. In addressing this section, Council concluded that Appellants' plan to consolidate the M-2 and R-2 parcels would result in a total of 120 dwelling units with only one access point to a public street.

The third SALDO provision, Section 184-401(A), provides that final plans submitted to the zoning officer shall include all applicable requirements specified in the section setting forth the final subdivision plan requirements as well as any further information deemed pertinent by the zoning officer or borough engineer. In this regard, Council determined that, in addition to the two aforementioned defects, the minor subdivision final plan "does not show the zoning district boundary on the plan and label the zoning district, does not show the acreage of the existing residential lot, and does not note the intended future use of the existing residential single-family dwelling on the R-2 property." Council's September 17, 2015, Decision at 2; Appellants' Brief, Appendix II at 2.

### *Issues*

Common pleas affirmed Council's denial of both the First and Second Plans and Appellants' appeal to this Court followed.[2] On appeal, we consider the following issues: (1) whether Council erred in denying the First Plan by determining that Appellants failed to establish a right to use Lorrick Lane to access

---

[2] Where, as here, common pleas did not take additional evidence, we are limited to reviewing whether the local governing body committed an error of law or if the governing body's findings are not supported by substantial evidence. *Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown*, 79 A.3d 720, 724 (Pa. Cmwlth. 2013); *Gerryville Materials, Inc. v. Planning Comm'n of Lower Milford Twp.*, 74 A.3d 322, 325 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 817 (Pa. 2014). Substantial evidence is defined as such relevant evidence as a reasonable mind might find adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

the Apartment Property; (2) whether Council erred in denying the First Plan by determining that Appellants failed to satisfy the requisite conditions for their waiver request from the slope disturbance limitation pertaining to their proposed enhancement of Lorrick Lane; (3) whether Council erred in denying the Second Plan by determining that a driveway could not be constructed over the R-2 Driveway Property in order to access the M-2 Apartment Property; and (4) whether Council's remaining reasons for denial were tantamount to technical deficiencies such that it should have permitted Appellants to correct them as conditions of approval. We turn first to Council's requirement that Appellants prove their right to access the Apartment Property via Lorrick Lane.

# I

Although Council characterizes its request to Appellants to demonstrate their right to use Lorrick Lane as merely an effort to confirm their standing to apply for a development, it is clear from the record that it improperly delved into title issues concerning that road. Once an applicant has demonstrated an interest in land sufficient to afford him standing, his subdivision application may not be rejected because his title is disputed. *See In re AMA/Am. Mktg. Ass'n*, 142 A.3d 923, 936 (Pa. Cmwlth. 2016)[3] (holding that, [i]t is well settled that issues concerning property rights in instruments of title must be resolved in the courts rather than in zoning or land development proceedings."); *BR Assocs. v. Bd. of Comm'rs of Twp. of Upper St. Clair*, 136 A.3d 548, 557 (Pa. Cmwlth. 2016) (holding that, the issue of whether an applicant had a legal right or permission under an easement to connect to stormwater facilities on an objector's property "is

---

[3] In August 2016, this Court denied AMA's petition for reconsideration or rehearing *en banc* and the appellee's petition for attorney's fees.

8

a property rights issue that must be raised in a public court of record, not in a land use proceeding before a municipal body.")[4]   Moreover, it also appears from Appellants' proffered documents that Lorrick Lane was commonly used and already dedicated to public use.[5]   *See* Nicholson Heights Plan; Reproduced Record (R.R.) at 152a.

In any event, we do not herein decide the legality of Appellants' right to use Lorrick Lane.   We do hold, however, that Council under the guise of standing improperly required them during the course of land development proceedings to establish definitively what was tantamount to a property right.   We turn now to whether Council erred in denying their waiver request from the slope disturbance limitation.

## II

Section 512.1(a) of the Pennsylvania Municipalities Planning Code (MPC),[6] 53 P.S. § 10512.1(a), provides that a modification from one or more provisions of a governing body's SALDO may be granted "if the literal

---

[4] *See supra* text accompanying note 1 regarding possible prescriptive easement and recorded right-of-way.

[5] Even though Lorrick Lane was not formally accepted by ordinance, continuous use most likely constituted acceptance by the public. *See Capozzi v. Cummins*, 159 A.2d 536, 539 (Pa. Super. 1960) (holding that, where there has been substantial public use, with or without any actions on behalf of the municipal corporation, a paper street can become a public way); *Bromley v. Borough of McDonald*, 896 A.2d 1289, 1293 (Pa Cmwlth. 2006) (holding that, where a street has been continuously used by the public since its inception for ingress and egress, such evidence establishes the public nature of the street notwithstanding the lack of formal acceptance).   In *Bromley*, we also noted that, where "a sale of lots references a map or plot which calls for certain alleys and streets, such constitutes a dedication of those roadways and the fact that a street may not be accepted by the municipality does not affect the continuing private contractual rights of property owners within the plan to use the streets." *Id*. at 1293 n.5.

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 40 of the Act of December 21, 1988, P.L. 1329.

9

enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed." The grant of waivers from SALDO provisions, however, requires less vigorous proof than the proof required for the granting of a variance from zoning ordinance provisions. *Telvil Constr. Corp. v. Zoning Hearing Bd. of E. Pikeland Twp.*, 896 A.2d 651, 656 (Pa. Cmwlth. 2006). At any rate, the decision to grant waivers is within the discretion of the governing body. *Miravich v. Twp. of Exeter*, 54 A.3d 106, 114 (Pa. Cmwlth. 2012) (*Miravich II*). A governing body may have abused its discretion in refusing to grant waivers where the denial is contrary to the recommendations of its experts or officials and literal enforcement of the SALDO requirements will frustrate the effect of the improvements designed to implement other requirements. *Ruf v. Buckingham Twp.*, 765 A.2d 1166, 1169 (Pa. Cmwlth. 2001). Ultimately, "[the governing body's] duty is to actively oppose schemes of development unreasonably proposed and conceived, but likewise, [its] duty is to sanction well planned development.'" *Id.* (citation omitted).

In the present case, Appellants planned to enhance Lorrick Lane and "develop, regrade, or strip 70% of slopes on the site ranging from 15% to 25%." Council's February 19, 2015, Decision at 2; Appellants' Brief, Appendix I at 2. To that end, they had to secure a waiver of the disturbance limitation for slopes of 15% to 25%, which provides:

> No more than Forty percent (40%) of such areas shall be developed and/or regraded or stripped of vegetation unless a soils engineer certifies the stability of the soils and slopes. When a soils engineer has certified the stability of the soils and slopes, the percentage of disturbance may be increased to Fifty-Five percent (55%).

10

Section 184-910.B.(1).b of the SALDO; R.R. at 456a. Additionally, Appellants were subject to the general provision in the SALDO pertaining to waivers based on physical hardship, which provides:

> In any particular case where the applicant can show by plan and written statement that, by reason of exceptional topographic or other physical conditions, strict compliance with any requirement of this chapter would cause practical difficulty or exceptional and undue hardship, Borough Council may relax such requirements to the extent deemed just and equitable, so as to relieve such difficulty or hardship, provided that such relief, if granted, will not be a detriment to the public good and will not impair the intent and purpose of this chapter or the desirable development of the immediate neighborhood.

Section 184-1201.B. of the SALDO; Supplement to the Certified Record (S.C.R.).

In support of their waiver request, Appellants set forth the following justification:

> The property has only three slope categories (0%-8%, 8%-15% & 15%-25%). There are no slopes of 25% or greater that were not man-made. Therefore, there are a disproportion [sic] percentage of slopes in the 15% and 25% slopes.

October 30, 2014, Modification Request; R.R. at 150a. In addition, they submitted the site plan for recording sheet C102,[7] with the above-cited justification, as supporting evidence for their request.[8] *See also* Slope Disturbance Map; R.R. at 151a (indicating that a soils engineer certified the stability of the soils and slopes).

At the subsequent Council meeting, at which time the solicitor expressed Council's dislike for the requested slope modification and recited the

---

[7] Site Plan for Recording, Sheet C102; R.R. at 207a.
[8] October 30, 2014, Letter from Appellants to Zoning Officer addressing October 15, 2014, Staff Report, ¶ 21 at 4; R.R. at 157a.

requirements for granting waivers, Mr. Victor on behalf of Appellants asserted that, "to use the slope modification as the only criteria to reduce the amount of development seems unreasonable." November 18, 2014, Regular Meeting of Council at 3; R.R. at 175a. Further, when a planning commission member commented that the developer could build two apartment buildings instead of the proposed three, Mr. Victor "agreed and stated that they could build two 8 story buildings which no one wants but is allowed under the ordinance." *Id*.

In February 2015, the Borough's engineer advised the Zoning Officer that there was an outstanding modification request and that the engineer could not recommend approval unless it was granted or Appellants amended their plans to conform to the SALDO.[9] At the subsequent meeting, Appellants offered to withdraw their request and amend the First Plan to comply with the slope requirements. They also requested that Council table its vote. In response, Council's solicitor "indicated that a written decision would be provided and the applicant could take an appeal or file a new application that would be required to go through the Planning Commission review process." February 18, 2015, Regular Meeting of Council at 2; R.R. at 247a.

In denying the waiver request, Council acknowledged that it had received the required report but observed that, "[e]ven when a report is certified by a soils engineer, the percentage of disturbance may only be increased from 40% to 55%." Council's February 19, 2015, Decision at 2; Appellants' Brief, Appendix I at 2. In that regard, Council concluded that it "does not believe that it can increase the amount of disturbance beyond 55%." *Id*. In addition, it determined as follows:

---

[9] February 12, 2015, Letter from Borough Engineer to Zoning Officer at 2; R.R. at 240a.

12

> [T]he developer has not proven that literal enforcement of the [SALDO] will exact undue hardship and that granting the modification would not be contrary to the public interest and the purpose and intent of the ordinance[10] would be preserved, as required by Section 512.1 of the [MPC] and by Section 184-1201 of the Borough's [SALDO].

*Id*. (footnote added).

In support of their position that Council erred in denying their slope modification request, Appellants point out that none of the reports issued by the zoning officer or the borough engineer raised substantive questions regarding their request. In addition, they emphasize that, notwithstanding the Planning Commission's January 2015 recommendation to approve the First Plan, subject to a couple of items which did not address the request,[11] Council denied the waiver request without substantial discussion. Further, they note that Council denied their request to table the vote, thereby denying them an opportunity to provide the information that Council requested. Accordingly, citing *Ruf*, 765 A.2d 1166, Appellants maintain that Council erred in denying their request.

In *Ruf*, this Court agreed with common pleas that the board of supervisors abused its discretion in refusing to grant the requested waivers of the subdivision ordinance at issue where, *inter alia*, the denial was contrary to the recommendations of the township's civil engineer and public work director and literal enforcement of the requirements would frustrate the effect of the

---

[10] In general, the purpose of the Borough's SALDO "is the promotion of the health, safety, morals, convenience and general welfare of the present and future inhabitants of Franklin Park Borough[.]" Section 184-102 of the SALDO; S.C.R.

[11] *See* January 14, 2015, Borough Engineer's letter, R.R. at 505a; Zoning Officer's January 15, 2015, Staff Report, R.R. at 507a; Intervenor/Neighbor Greg Woodworth's letter pertaining to an extension of the paved portion of Lorrick Lane and water line issues, R.R. at 196a.

13

improvements designed to implement other requirements. Further, we determined that the board also abused its discretion where the landowners established via overwhelming and undisputed evidence that, due to the unique topography of the property, they could not comply with the road widening and stormwater control requirements without violating the natural resource protection standards in the zoning ordinance such that literal enforcement would be unreasonable and cause undue hardship. 765 A.2d at 1169. Accordingly, concluding that the landowners proved that granting the waivers would serve the purpose and intent of the ordinance and would not be contrary to the public interest, we held that the board abused its discretion in denying the modification where the request was modest, safe, and favorably recommended by township officials. *Ruf*, however, is distinguishable from the present case.

Besides reciting the slope categories, the nature of the slopes, and the percentage of each category, Appellants failed to establish by plan or written statement that, due to exceptional topographic or other physical conditions, strict compliance with the slope requirement would cause practical difficulty or exceptional and undue hardship. In addition, they did not show how denial of the modification would frustrate the effect of the improvements designed to implement other requirements of the SALDO.

Moreover, besides the Planning Commission's recommended approval of the First Plan, there is no indication that any officials specifically recommended approval of the waiver. As previously noted, the Borough's engineer indicated that she could not recommend approval of the First Plan absent a grant of the waiver or the withdrawal of the waiver request. Further, Appellants' subsequent withdrawal of their waiver request and ability to revise their plan

14

support Council's conclusion that literal enforcement would not exact undue hardship due to peculiar conditions of the land in question.[12]  In that regard, notwithstanding the fact that the proof required for a waiver from a SALDO requirement is less rigorous than that required for granting a variance from zoning ordinance provisions, *Telvil*, Appellants still bore the burden of establishing the necessary criteria for the waiver.  Accordingly, we conclude that Council did not abuse its discretion in refusing to waive the ordinance slope disturbance limitation of 40-55% to allow a disturbance of 70% and, therefore, did not err in denying the First Plan.  We turn now to addressing whether Council erred in denying the Second Plan by concluding that a driveway could not be constructed over the R-2 Driveway Property in order to access the M-2 Apartment Property.

### III

In support of its determination that Appellants cannot use their R-2 lot in order to access their M-2 lot, Council cited *Mine Safety* and *Atria*.  In *Mine Safety*, 551 A.2d 634, this Court held that a company could not use a private driveway in a rural residential zoning district to serve an industrial use in a district in an adjacent municipality where such use was permitted and existed.  In so holding, we concluded that the driveway use on the residential property was prohibited in that it "would serve no purpose other than to provide *additional*

---

[12] We are troubled by Council's refusal to permit Appellants to resubmit the First Plan without the waiver request, thereby exhibiting an apparent failure to comply with its "legal obligation to proceed in good faith in reviewing and processing development plans." *Kohr v. Lower Windsor Twp. Bd. of Supervisors*, 910 A.2d 152, 160 n.13 (Pa. Cmwlth. 2006).  This duty "includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there is a misunderstanding or difference of opinion." *Id*.  This seeming lapse in good faith is especially troublesome given the fact that the proposed use is permitted, by right, in the M-2 Zoning District.

means of ingress and regress [sic] for persons employed at the industrial site." *Id.* at 636 (emphasis added). We focused, in particular, on the disparity, if any, between the permissible uses of the lot and the uses to be served by the driveway. *Id.* at 635.

In *Atria*, 264 A.2d 609, the Supreme Court considered a situation where the driveway at issue was located in a residential zone and was an accessory use to the commercial facility located in an adjacent commercial zone. Mindful that a driveway had to be considered with the use it served, the Court concluded that use of a private driveway for seventy-five to one hundred cars per day would severely alter the character of the residential district such that, even though only an accessory use, the driveway's connection to the commercial property would render it prohibited under the applicable zoning ordinance.

While it is true that both *Mine Safety* and *Atria* hold that an access driveway cannot traverse a residentially-zoned lot in order to access incompatible uses (industrial and commercial), there are also cases in which access driveways were permitted in more compatible circumstances. In *Sprint Spectrum, L.P. v. Zoning Hearing Board of the Township of North Whitehall*, 823 A.2d 258, 262 (Pa. Cmwlth. 2003), Sprint sought to access a communications tower to be located on leased property in an agricultural zone. This Court held that an existing driveway to be used once per month for inspection of the tower would not change the character of the residential district and that one SUV per month was less intrusive than the permitted use by farm vehicles to access the property for farming purposes. In *Prospect Park Borough v. McClaskey*, 30 A.2d 179, 181 (Pa. Super. 1943), the Superior Court held that property owner's use of commercially-zoned parcel for ingress and egress to brick manufactory in an industrial zone was permitted because the access was not part of the manufacturing process, did not alter the character of the district in which it was located and would not endanger

16

the interests which the zoning ordinance was intended to protect. *Id.* at 181. In other words, truck access was equally advantageous and suitable for commercial as well as industrial purposes.

In the present case, even though Appellants estimate that the traffic generated could be in the realm of 861 vehicles on a typical weekday, the use on both the Apartment and the Driveway Properties is residential in nature. As Appellants also assert, there seemingly are no provisions in the Zoning Ordinance prohibiting access to a more intense residential use such as a multi-family apartment building via property zoned for a less intense residential use. There are three provisions, however, prohibiting access via a residential area to three types of commercial-type areas: (1) shopping centers; (2) industrial parks; and (3) storage facilities. Sections 212-1905.R(11), 212-1906.E(11), and 212-1906.F(2) of the Zoning Ordinance. The principle of *expressio unius est exclusio alertius* establishes the inference that the express mention of specific matters implies the exclusion of others. *Finkelstein v. Commonwealth*, 433 A.2d 146, 148 (Pa. Cmwlth. 1981).

In addition, in neither *Mine Safety* nor *Atria* was the property sought to be accessed rendered landlocked as a result of the denial of access. In that regard, this Court in *Taged, Inc. v. Zoning Board of Adjustment of Borough of Monroeville*, 276 A.2d 845, 851 (Pa. Cmwlth. 1971), noted that a controlling factor in *Atria* was that the business premises were not landlocked as a result of the denial of additional access. Here, Council is denying ostensibly legal access to what is evolving into a landlocked parcel. As this Court long ago stated:

> [T]he vital importance of a landowner's property right in an easement of access for ingress and regress . . . where his land is otherwise landlocked, is too obvious for discussion. . . . [T]he denial of the right to use it can result in the deprivation of every property right and use that attaches to his real property ownership.

17

*Id.* at 849. *See also Rolling Green Golf Club Case*, 97 A.2d 523, 526 (Pa. 1953) (holding that, "[t]he right of a property owner to have (or build) a road over his own land to connect with a public road has been recognized for centuries as one of his fundamental inalienable rights.").[13]

Accordingly, having concluded that Council erred in determining that Appellants could not use their R-2 lot in order to access their M-2 lot, we reverse common pleas' order affirming Council's denial of the Second Plan. We turn, briefly, to Appellants' final issue pertaining to Council's treatment of technical deficiencies.

**IV**

Pursuant to Council's September 2015 decision, the technical deficiencies issue arose primarily from its denial of the Second Plan, proposing access to the Apartment Property via a new driveway over the Driveway Property. As part of the Second Plan, Appellants at Council's request filed a Lot Consolidation Plan for the Apartment and Driveway Properties. In that regard, Council in denying the Second Plan stated that the minor subdivision final plan "does not show the zoning district boundary on the plan and label the zoning

---

[13] In response to Appellants' valid concern that the Apartment Property could be rendered landlocked, Council argues that they could use the Apartment Property for other permissible uses in an M-2 zoning district and use the Driveway Property for access with none of the attendant problems present herein. These uses include farm, forestry, greenhouse, emergency service and municipal facility, municipal building and facilities, place of worship, public utility structure (other than telecommunications tower), essential/commercial telecommunications tower, and public utility building. Section 212-404 of the Zoning Ordinance. However, only farm (without animal husbandry) and forestry uses are permitted; the others are conditional uses. Moreover, the only residential use allowed in the R-2 district is a single-family dwelling, a use not permitted in M-2. Finally, as Appellants note, several of these uses would require the Borough to purchase their property. Therefore, the options suggested by Council are of extremely limited viability.

18

district, does not show the acreage of the existing residential lot, and does not note the intended future use of the existing residential single-family dwelling on the R-2 property." Council's September 17, 2015, Decision at 2; Appellants' Brief, Appendix II at 2. Council states that, "[t]his information was deemed pertinent by the Zoning Officer in the August 27, 2015 Staff Report." *Id.*

In response, Appellants assert that Council already knew the zoning of the two parcels, the fact that the boundary line of the zoning districts was on the western property line of the Apartment Property, the acreage of the Driveway Property and the acreage of each individual lot. In addition, Appellants maintain that the zoning officer knew the intended future use of the existing single-family dwelling on the Driveway Lot in that they asserted throughout the documents filed in connection with the Second Plan that the dwelling would be razed to make way for the new driveway and explained such throughout the entire review process. In addition, Appellants assert that the Lot Consolidation Plan was filed only at the behest of Council,[14] was unnecessary given the commonality of ownership and that CGR Holdings could have provided the Apartment Property with an easement over the Driveway Property.

As Council asserts, a final plan can be approved only after a developer has complied fully with a municipality's subdivision and land development ordinance and zoning ordinance. *Lyons Borough v. Twp. of Maxatawny*, 123 A.3d 347, 353-54 (Pa. Cmwlth. 2015). It is equally true, however, that "the preliminary plan containing minor defects correctable by amendment must be approved subject

---

[14] *See* June 3, 2015, Letter from Appellants at ¶¶ 1and 7 indicating that no lot consolidation is proposed and, more specifically, that there is no proposal to add parcel 1346-N-91 to parcel 1346-R-258; R.R. at 280-81a.

19

to a condition that necessary corrections be made." *CACO Three, Inc. v. Bd. of Supervisors of Huntington Twp.*, 845 A.2d 991, 994 (Pa. Cmwlth. 2004). In any event, we emphasize a governing body's legal obligation to proceed in good faith. *See Kohr v. Lower Windsor Twp. Bd. of Supervisors*, 910 A.2d 152, 160 n.13 (Pa. Cmwlth. 2006).

## V

Accordingly, consistent with the foregoing opinion, we affirm common pleas' order that affirmed Council's denial of the First Plan and reverse the court's order that affirmed Council's denial of the Second Plan.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CGR Real Estate, LLC, CGR RE     :
Franklin Park, LP, and CGR Holdings, LLC, :
                             :
         Appellants          :
                             :
         v.              :  No. 780 C.D. 2016
                             :
Borough Council of The Borough of     :
Franklin Park                   :
                             :
         v.              :
                             :
Gregory and Kathleen Woodworth,    :
Helene Donch and Bernard M. Avon, Jr.  :
                             :
CGR Holdings, LLC           :
                             :
         v.              :  No. 971 C.D. 2016
                             :
Borough Council of the Borough of     :
Franklin Park                   :
                             :
         v.              :
                             :
Gregory and Kathleen Woodworth,    :
Helene Donch and Bernard M. Avon, Jr.  :
                             :
Appeal of: CGR Real Estate,       :
LLC and CGR Holdings, LLC      :
                             :
CGR Real Esstate, LLC        :
                             :
         v.              :  No. 972 C.D. 2016
                             :  ARGUED:  November 14, 2016
LLC and CGR Holdings, LLC      :

Borough Council of the Borough of : 
Franklin Park :
:
v. :
:
Gregory and Kathleen Woodworth, :
Helene Donch and Bernard M. Avon Jr. :
:
Appeal of:  CGR Real Estate, :
LLC and CGR Holdings, LLC :


# **O R D E R**


AND NOW, this 26th day of January, 2017, the order of the Court of Common Pleas of Allegheny County is hereby affirmed in part, and reversed in part, consistent with the foregoing opinion.


_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge


2